STATE OF NORTH CAROLINA v. ERNEST WEST BASDEN

No. 159A93

(Filed 30 December 1994)

**1. Jury § 262 (NCI4th)— first-degree murder—jury selection—hesitancy over death penalty—peremptory challenge**

There was no error during jury selection for a first-degree murder where the trial court initially excluded a juror for cause at the State's request, then agreed to strike its prior ruling and allow the State to exclude her through a peremptory challenge. A prosecutor may exercise a peremptory challenge to excuse a juror due to his hesitancy over the death penalty.

**Am Jur 2d, Jury §§ 233 et seq.**

**2. Jury § 226 (NCI4th)— first-degree murder—jury selection—opposition to death penalty—rehabilitation**

The trial court did not err during jury selection for a first-degree murder by granting the prosecutor a challenge for cause without permitting defendant to attempt to rehabilitate the potential juror where the juror's answers were unequivocal that she could not impose the death penalty and defendant failed to show that additional questioning would have resulted in different answers.

**Am Jur 2d, Jury § 290.**

**Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.**

**3. Jury § 127 (NCI4th)— first-degree murder—jury selection—asking jurors if they were qualified—no error**

There was no error during jury selection in a first-degree murder prosecution where the court asked, or permitted the prosecutor to ask, potential jurors whether they were "qualified." The question was asked to assist the trial court in making the final

determination as to the potential jurors' ability to serve, the trial court asked numerous questions of each venireperson, and at no time did the trial court simply rely upon the venireperson's own assessment of his or her qualifications to serve in determining if that person could sit on the jury.

**Am Jur 2d, Jury §§ 201, 202.**

**4. Constitutional Law § 309 (NCI4th)— first-degree murder— effective assistance of counsel—admission of second-degree murder or manslaughter**

There was no error in a first-degree murder prosecution where defendant's attorney admitted in his opening statement, without getting defendant's consent, that defendant was guilty of second-degree murder or voluntary manslaughter but defendant consented on the record just prior to closing arguments to his attorney's decision to concede guilt to second-degree murder or voluntary manslaughter. Defendant's consent amounted to ratification of defense counsel's earlier statement and cured any possible error.

**Am Jur 2d, Criminal Law §§ 752, 985-987.**

**Modern status of rules and standards in state courts as to adequacy of defense counsel's representation of criminal client. 2 ALR4th 27.**

**Waiver or estoppel in incompetent legal representation cases. 2 ALR4th 807.**

**5. Criminal Law § 461 (NCI4th)— first-degree murder—prosecutor's argument—expert witness—hourly rate**

There was no error requiring the trial court to intervene *ex mero motu* in the prosecutor's argument in a first-degree murder prosecution where defendant contends that the prosecutor grossly misrepresented the facts when he said that a defense witness was being paid $200 an hour, but, while the witness said that he had put more time into this case than the hours alluded to by the prosecutor, he never said how much additional time was involved and the prosecutor's estimate was therefore within the record. Moreover, even if the prosecutor's estimate was substantially higher than the actual amount, it was not so grossly improper as to require intervention *ex mero motu*.

**Am Jur 2d, Trial §§ 554 et seq.**

STATE v. BASDEN

[339 N.C. 288 (1994)]

Supreme Court's views as to what courtroom statements made by prosecuting attorney during criminal trial violate due process or constitute denial of fair trial. 40 L. Ed. 2d 886.

6. **Criminal Law § 432 (NCI4th)— first-degree murder—prosecutor's argument— reference to defendant as "just like in Nazi Europe"**

The trial court did not err in a first-degree murder prosecution by not intervening *ex mero motu* where the prosecutor referred to defendant as "just like in Nazi Europe." The prosecutor was analogizing defendant's argument that he was easily led to kill the victim to Nazis who defended their killings by arguing that they were simply following orders.

**Am Jur 2d, Trial §§ 681, 682.**

**Negative characterization or description of defendant, by prosecutor during summation of criminal trial, as ground for reversal, new trial, or mistrial—modern cases. 88 ALR4th 8.**

**Supreme Court's views as to what courtroom statements made by prosecuting attorney during criminal trial violate due process or constitute denial of fair trial. 40 L. Ed. 2d 886.**

7. **Criminal Law § 1320 (NCI4th)— first-degree murder—sentencing—instructions—consideration of aggravating circumstance**

The trial court did not err in a first-degree murder sentencing hearing by giving what defendant contended was a peremptory instruction on the one aggravating circumstance in the case. The court did not instruct the jury that it had to find that the State's evidence established the aggravating circumstance, but said that the jury would consider the State's evidence at sentencing as evidence which the State contends aggravates defendant's crime. The subsequent instruction that the jury must find the existence of the aggravating circumstance beyond a reasonable doubt cured any possible error.

**Am Jur 2d, Trial §§ 1441 et seq.**

STATE v. BASDEN

[339 N.C. 288 (1994)]

8. **Criminal Law § 1360 (NCI4th)— first-degree murder—sentencing—mitigating circumstance—impaired capacity**

   The trial court did not err in a first-degree murder sentencing hearing by instructing the jury to find the mitigating circumstance of impaired capacity if defendant suffered from major depression, chronic pain from health problems, and substantial drug use where defendant requested the instruction, did not object to it, and stated that he was satisfied with it. Furthermore, read in its entirety, the instruction is not misleading.

   **Am Jur 2d, Criminal Law §§ 598, 599; Trial §§ 1441 et seq.**

9. **Criminal Law § 1363 (NCI4th)— first-degree murder—sentencing—nonstatutory mitigating circumstance—instruction**

   The trial court did not err in a first-degree murder sentencing hearing by instructing the jury that they could refuse to consider the nonstatutory mitigating circumstance of good conduct in jail if they deemed the evidence to have no mitigating value. *Skipper v. South Carolina*, 476 U.S. 1, does not require the North Carolina Supreme Court to overrule its precedents holding that jurors are allowed to reject any nonstatutory mitigating circumstance which they do not deem to have mitigating value.

   **Am Jur 2d, Criminal Law §§ 598, 599; Trial §§ 1441 et seq.**

10. **Criminal Law § 454 (NCI4th)— first-degree murder—sentencing—prosecutor's argument as to mitigating circumstances**

   There was no error in a first-degree murder sentencing hearing requiring intervention *ex mero motu* where defendant contended that the prosecutor's argument misstated the law governing mitigating circumstances and belittled defense counsels' role in the sentencing phase of trial.

   **Am Jur 2d, Trial §§ 572 et seq.**

11. **Criminal Law § 454 (NCI4th)— first-degree murder—sentencing—prosecutor's argument**

   There was no error in a first-degree murder sentencing hearing where defendant contended that the prosecutor improperly argued that the jury could prevent defendant from killing again

STATE v. BASDEN

[339 N.C. 288 (1994)]

only by giving the death penalty, but that argument has been held to be proper; defendant contended that the prosecutor improperly referred to defendant as a "mad dog killer," but that comment was in rebuttal of defendant's position that he was a nonviolent person who was easily dominated and easily led and the statement was not grossly improper; and defendant argued that the prosecutor mocked defendant's procedural and substantive rights and penalized him for exercising his rights, but a very similar argument has been held to be proper.

Am Jur 2d, Trial 572 et seq., 681, 682.

Negative characterization or description of defendant, by prosecutor during summation of criminal trial, as ground for reversal, new trial, or mistrial—modern cases. 88 ALR4th 8.

Propriety, under Federal Constitution, of evidence or argument concerning deterrent effect of death prenalty. 78 ALR Fed. 553.

Supreme Court's views as to what courtroom statements made by prosecuting attorney during criminal trial violate due process or constitute denial of fair trial. 40 L. Ed. 2d 886.

12. Criminal Law § 447 (NCI4th)— first-degree murder—sentencing—prosecutor's argument—victim's family

There was no error in a first-degree murder sentencing hearing where defendant contended that the prosecutor improperly injected the law that the State could not call any of the victim's family as witnesses. In light of *State v. McCollum*, 334 N.C. 208, in which the prosecutor referred to the victim and the victim's family in a far more severe manner than the statements in this case, the argument was not grossly improper.

Am Jur 2d, Trial §§ 664 et seq.

Propriety and prejudicial effect of prosecutor's remarks as to victim's age, family circumstances, or the like. 50 ALR3d 8.

Supreme Court's views as to what courtroom statements made by prosecuting attorney during criminal trial violate due process or constitute denial of fair trial. 40 L. Ed. 2d 886.

STATE v. BASDEN

[339 N.C. 288 (1994)]

**13. Criminal Law § 447 (NCI4th)— first-degree murder—sentencing—prosecutor's argument—victim**

There was no impropriety in the prosecutor's argument in a first-degree murder sentencing hearing that the jury step into the shoes of the victim.

**Am Jur 2d, Trial § 648.**

**14. Constitutional Law § 371 (NCI4th)— death penalty—constitutional**

The North Carolina death penalty is constitutional.

**Am Jur 2d, Criminal Law § 628.**

**Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed or carried out. 90 L. Ed. 2d 1001.**

**15. Criminal Law § 1323 (NCI4th)— capital sentencing—nonstatutory mitigating circumstances—value**

The trial court did not err in a capital sentencing hearing by permitting the jurors to reject nonstatutory mitigating circumstances as having no mitigating value.

**Am Jur 2d, Trial §§ 1441 et seq.**

**16. Criminal Law § 1323 (NCI4th)— capital sentencing—instructions—mitigating circumstances**

The trial court did not err in a first-degree murder sentencing hearing by instructing that each juror may consider any mitigating circumstance found in sentencing issue two when answering issues three and four.

**Am Jur 2d, Trial §§ 1441 et seq.**

**17. Criminal Law § 1335 (NCI4th)— capital sentencing—length of jury deliberation—motion for life sentence denied**

The trial court did not err in a capital sentencing hearing by denying defendant's motion that a life sentence be imposed where defendant argued that the jury had deliberated more than a reasonable time and had asked if it could sentence defendant to life without parole.

**Am Jur 2d, Criminal Law §§ 598, 599; Trial § 1886.**

STATE v. BASDEN

[339 N.C. 288 (1994)]

**18. Criminal Law § 1373 (NCI4th)— death sentence—not disproportionate**

A death sentence was not disproportionate where the evidence supported the finding of the sole aggravating circumstance that the murder was committed for pecuniary gain, there is nothing to suggest that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, and the proportionality pool includes two cases in which the Court upheld death sentences for contract killings committed under remarkably similar circumstances.

**Am Jur 2d, Criminal Law § 628.**

**Validity of death penalty, under Federal Consitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Stevens, J., at the 15 March 1993 Criminal Session of Superior Court, Duplin County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to an additional judgment imposed for conspiracy to commit murder was granted 7 April 1994. Heard in the Supreme Court 10 October 1994.

*Michael F. Easley, Attorney General, by Clarence J. DelForge III, Assistant Attorney General, for the State.*

*J. Kirk Osborn for defendant-appellant.*

PARKER, Justice.

Defendant was tried capitally on an indictment charging him with the first-degree murder of Billy Carlyle White. The jury returned a verdict finding defendant guilty of first-degree murder on the theory of premeditation and deliberation. Following a sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended that defendant be sentenced to death. The jury also found defendant guilty of conspiracy to commit murder and the trial court sentenced defendant to ten years, such sentence to be served after the death sentence. For the reasons discussed herein, we conclude the jury selection, guilt-innocence phase, and sentencing proceeding were free from prejudicial error and the death sentence is not disproportionate.

STATE v. BASDEN

[339 N.C. 288 (1994)]

The State's evidence tended to show Sylvia White wanted to kill her husband, Billy White, for at least a year. She unsuccessfully tried to poison him with wild berries and poisonous plants. She also enlisted the help of Linwood Taylor, defendant's nephew. Taylor then approached defendant and told him he needed a hit man and asked defendant if he wanted the job. Defendant initially thought the idea was crazy and refused. Later, when defendant got into financial difficulty he asked Taylor if the offer still stood and agreed to kill White.

Taylor developed a scheme to lure White, who was an insurance salesman, to a location where he could be killed. Taylor pretended to be a wealthy businessman from out of town who had bought property in Jones County and wanted to buy insurance. Taylor arranged for White to meet him in a wooded rural area at 8:30 p.m. Sunday, 20 January 1992. On the day of the murder, Taylor and defendant drove to the designated spot and waited for White.

When White arrived, Taylor got out of his car and introduced himself to White as Tim Conners. Then Taylor said he needed to use the bathroom and stepped to the other side of the road. Defendant got out of the car and picked up a twelve-gauge shotgun he had placed on the ground beside the driver's side of the car. Defendant pointed the gun at White and pulled the trigger. The shotgun did not fire because defendant had not cocked the hammer back. Defendant then cocked the hammer and fired. White was knocked to the ground. Defendant removed the spent shell casing and loaded another shell into the shotgun. Defendant then approached White, who was lying faceup on the ground, and while standing over White, shot him again. At trial the pathologist testified that White bled to death from massive shotgun wounds to the right upper chest and left lower abdomen. Although his aorta was nearly severed from his heart, White did not die instantly but would have remained conscious for some period of time and would have felt pain.

Defendant and Taylor drove back to Taylor's house after the shooting. Taylor said he thought he left a map at the crime scene so they returned and went through White's pockets taking a blank check, wallet, and gold ring. They then returned to Taylor's house and burned all their clothing in the backyard. They also sawed the shotgun into three or four pieces with a hacksaw, put the pieces into a bucket of cement, and threw it over a bridge into the Neuse River. Taylor gave defendant three hundred dollars.

STATE v. BASDEN

[339 N.C. 288 (1994)]

Prior to defendant's arrest, police officers retrieved two metal base portions of spent shotgun shells which were found in ashes from the fire in Taylor's backyard. Forensic examination indicated they were consistent with twelve-gauge shotgun shells and could have been fired from the same weapon. Officers also went to defendant's repair shop in Kinston and retrieved a man's gold-tone ring with three diamond settings from defendant, who had it in his pocket.

Taylor and Sylvia White were arrested for murder on 12 February 1992. Defendant went to the Jones County Sheriff's Department where Taylor told defendant that he had confessed. Taylor advised defendant to turn himself in and talk to SBI Agent Eric Smith. Defendant was interviewed by Agent Smith and Detective Simms of the Lenoir County Sheriff's Department. After giving some preliminary background information, defendant told the officers that he shot White. The officers immediately read defendant his *Miranda* rights and defendant signed a written waiver of his rights. Defendant then gave a detailed confession and stated that he killed White because he needed the money.

Defendant presented evidence that he suffered from depression, arthritis, kidney problems, pancreatitis, and drug and alcohol abuse. He is the youngest of ten children. He was extremely close to his mother, who was killed in a car accident when he was fourteen years old, and he never really recovered from her death. Defendant had been married once for about five years and was a good father to his stepchildren. Defendant was considered by friends and family to be a loner.

Dr. J. Don Everhart, a clinical psychologist, testified that defendant has a dependent personality disorder; he is lacking in self-confidence and clings to stronger people, performing unpleasant tasks for them to retain their support. Dr. Everhart further testified that defendant has an avoidance personality disorder; he is shy and uncomfortable in social settings and is easily isolated. Finally, defendant has a schitzotypal personality disorder, with feelings of being disembodied and disassociated from life events.

Additional facts will be presented as necessary for an understanding of the issues.

JURY SELECTION ISSUES

[1] Defendant first contends the trial court erred by excusing potential juror Jarman for cause because of her views on the death penalty.

A review of the transcript shows that while the trial court initially excluded Mrs. Jarman for cause, at the State's request, the trial court agreed to strike its prior ruling and allow the State to exclude her through a peremptory challenge. A prosecutor may properly exercise a peremptory challenge to excuse a juror due to his hesitancy over the death penalty. *State v. Robinson*, 336 N.C. 78, 443 S.E.2d 306 (1994). Following *Robinson*, we hold that the trial court did not err in allowing the prosecutor to peremptorily excuse prospective juror Jarman.

[2] Defendant also contends the trial court erred by excluding potential juror Pearsall for her feelings about the death penalty.

The standard for determining whether a prospective juror may be properly excused for cause for his views on capital punishment is whether those views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52 (1985); *see also State v. Brogden*, 334 N.C. 39, 42, 430 S.E.2d 905, 907 (1993) (reiterating *Witt* standard).

In the instant case, the transcript reveals that Mrs. Pearsall clearly and unequivocally stated she could not impose the death penalty even though she acknowledged some crimes were bad enough to warrant capital punishment.

Q. . . . . Can you tell me in your own words how you feel about the death penalty?

A. Well, I don't really know. I'm against the death penalty.

. . . .

Q. Have you had that feeling about all of your adult life, Mrs. Pearsall?

A. Yes.

. . . .

Q. Mrs. Pearsall, are you saying then that you would vote against any verdict that would mean the death penalty, is that right?

A. Yes.

Q. Are you saying also, Mrs. Pearsall, then that in no event and under no circumstances could you vote to return a verdict that would mean the death penalty regardless of the evidence and the law in the case, is that correct, ma'am?

A.   Well, if the evidence was there, it would be different, you know. If the evidence proved that he was guilty, it would be different.

Q.   Uh, huh. Well, let me ask you this, Mrs. Pearsall. Let me put it to you this way. Do you think that there are some cases that are bad enough that the death penalty ought to be imposed?

A.   Yes.

. . . .

Q.   Well, let me ask you this, Mrs. Pearsall. Not talking about this case in particular, because you don't know anything yet about the evidence in this case, but just as a general proposition, do you think that you could sit on a jury and in an appropriate case, could you yourself vote to give somebody the death penalty? Could you do that?

A.   No, I don't think so.

Q.   You could not? So regardless of what your feelings were about the case, in other words and even though you say it may be appropriate in some cases, you're saying, ma'am, then that you yourself could not vote to give somebody the death penalty, is that right?

A.   Yes.

Defendant contends that his counsel should have been allowed to rehabilitate juror Pearsall with further questions about her feelings on the death penalty. However, "where the record shows the challenge is supported by the prospective juror's answers to the prosecutor's and court's questions, absent a showing that further questioning would have elicited different answers, the court does not err by refusing to permit the defendant to propound questions about the same matter." *State v. Gibbs*, 335 N.C. 1, 35, 436 S.E.2d 321, 340 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 881 (1994). Pearsall's answers were unequivocal that she could not impose the death penalty and defendant has failed to show that additional questioning would have resulted in different answers.

On these facts and applying the foregoing principles, we conclude the trial court did not err in granting the prosecutor's challenge for cause without permitting defendant to attempt to rehabilitate Pearsall.

**STATE v. BASDEN**

[339 N.C. 288 (1994)]

**[3]** Defendant next contends the trial court erred when it continually asked, or permitted the prosecutor to ask, potential jurors whether they were "qualified" when juror qualification is a matter of law vested exclusively with the trial court.

A review of the transcript shows that the trial court and the prosecutor only asked some of the venirepersons if they felt they were qualified. This was done to assist the trial court in making the final determination as to their ability to serve. Furthermore, the trial court asked numerous questions of each venireperson. At no time did the trial court simply rely upon the venireperson's own assessment of his or her qualifications to serve in determining if that person could sit on the jury. Therefore, we hold the trial court did not abdicate its responsibility for seating qualified jurors by asking venirepersons whether they felt they were qualified.

GUILT-INNOCENCE PHASE ISSUES

**[4]** Defendant's first contention is that he was denied effective assistance of counsel under the North Carolina and United States Constitutions when, without getting defendant's consent, his attorney admitted in opening statement that defendant was guilty of second-degree murder or voluntary manslaughter.

In *State v. Harbison*, 315 N.C. 175, 337 S.E.2d 504 (1985), *cert. denied*, 476 U.S. 1123, 90 L. Ed. 2d 672 (1986), this Court recognized "that ineffective assistance of counsel, per se in violation of the Sixth Amendment, has been established in every criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent." *Id.* at 180, 337 S.E.2d at 507-08. However, the instant case is distinguishable from *Harbison* in that just prior to closing arguments defendant consented on the record to his attorney's decision to concede guilt to second-degree murder or voluntary manslaughter. As per se error is based on a defendant not consenting to his counsel's admission of his guilt, we conclude that defendant's consent prior to the closing arguments amounted to ratification of defense counsel's earlier statement and cured any possible error in this case. Accordingly, this assignment of error is overruled.

**[5]** Defendant next contends the prosecutors denied him a fair trial by an argument which travelled well beyond the trial record and invited the jury to convict the defendant on the basis of irrelevant and prejudicial matters.

When arguing to the jury, a prosecutor may not make statements based upon matters outside the record, but may, based on "his analysis of the evidence, argue any position or conclusion with respect to a matter in issue." N.C.G.S. § 15A-1230 (1988); *State v. Brown*, 327 N.C. 1, 18, 394 S.E.2d 434, 444 (1990). Trial counsel are allowed wide latitude during argument to the jury, control of which is left to the sound discretion of the trial court. *State v. Small*, 328 N.C. 175, 400 S.E.2d 413 (1991). Moreover, when defense counsel fails to object to a prosecutor's arguments, the remarks "must be gross indeed for this Court to hold that the trial court abused its discretion in not recognizing and correcting *ex mero motu* the comments regarded by defendant as offensive only on appeal." *State v. Brown*, 327 N.C. at 19, 394 S.E.2d at 445, citing *State v. Johnson*, 298 N.C. 355, 368-69, 259 S.E.2d 752, 761 (1979). *See also State v. Bacon*, 337 N.C. 66, 446 S.E.2d 542 (1994).

On appeal defendant complains Mr. Butler grossly misrepresented the facts when he said the defendant's expert witness, Dr. Everhart, was being paid $200 per hour. During cross-examination, Dr. Everhart testified regarding his fee as follows:

Q.   [Prosecutor] $1500 for the five and a half hours and I believe you had another hour and a half?

A.   [Dr. Everhart] Well, I've had and how about—

Q.   And coming into court?

A.   How about the hours that I've been here and the hours putting the reports together and—

Q.   That's for all the whole thing, is that correct?

A.   It's probably less than a good junior attorney would make for the amount of time.

Even though Dr. Everhart testified that he had put more time into this case than the seven hours which the prosecutor alluded to, he never said how much additional time was involved. Therefore, the prosecutor's $200 per hour estimate was within the bounds of the trial record. However, even if the $200 per hour estimate was substantially higher than the actual amount paid to Dr. Everhart, the prosecutor's argument was not so grossly improper as to require the trial court to intervene *ex mero motu* in the absence of an objection.

[6] Next defendant complains Mr. Butler used an inflammatory and fundamentally unfair reference to defendant as "just like in Nazi

Europe." In the instant case, the prosecutor was analogizing defendant's argument that he was easily led by Linwood Taylor to kill the victim to the Nazis who defended their killings by arguing that they were simply following orders. Again, defendant did not object to this reference, and we do not believe that the prosecutor's isolated analogy to a Nazi in Germany was so grossly improper as to require the trial court to intervene *ex mero motu*.

Accordingly, this assignment of error is overruled.

SENTENCING PROCEEDING ISSUES

[7] Defendant first contends the trial court erred when it peremptorily instructed the jury at the beginning of the sentencing hearing that the State's aggravating circumstances "will be considered by the jury as such."

The challenged instruction reads as follows:

THE COURT: All right, Mr. District Attorney, will there be any further presentation or evidence by the state that should be regarded as aggravating factors as it were?

MR. ANDREWS: Your honor, we would re-introduce the evidence that we have already introduced and we would rely upon that and with that, Your Honor, the state would rest.

THE COURT: The Court will receive that evidence that has been heretofore introduced in the evidence as aggravating factors, the state contends are in aggravation of this crime which will be considered by the jury as such.

Defendant argues that this instruction amounted to a peremptory instruction on the one aggravating circumstance in this case, namely, that defendant committed this crime for pecuniary gain. We disagree.

In this case, the trial court did not instruct the jury it had to find the State's evidence established the aggravating circumstance of pecuniary gain. Instead, the trial court said the jury will consider the State's evidence at sentencing as evidence which the State contends aggravates defendant's crime. Furthermore, the trial court's subsequent instruction that the jury must find the existence of the aggravating circumstance beyond a reasonable doubt cured any possible error. In *State v. Young*, 324 N.C. 489, 498, 380 S.E.2d 94, 99 (1989), the Court held that a trial court's statement that evidence tended to show defendant had confessed to the crime did not amount to expres-

sion of opinion by the trial court, where evidence had been introduced which showed defendant confessed to the crime charged, and where the trial court's statement was immediately followed by the instruction: "Now, *if you find* that the defendant made that confession, *then* you should consider all the circumstances under which it was made in determining whether it was a truthful confession and the weight which you will give to it." *Id.* at 498, 380 S.E.2d at 99. Therefore, we overrule this assignment of error.

**[8]** Defendant next contends the trial court erred by conditioning consideration of the statutory mitigating circumstance in N.C.G.S. § 15A-2000(f)(6) on a finding that defendant was suffering from major depression, chronic pain from health problems, and substantial substance abuse. Defendant argues the trial court should have instructed the jury to find the mitigating circumstance if a juror found defendant was impaired by depression or chronic pain or drug abuse. We are not persuaded by defendant's argument.

The statutory mitigating circumstance in N.C.G.S. § 15A-2000(f)(6) (1988) requires the jury to determine whether "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired." The trial court's instruction reads in pertinent part as follows:

> You would find this mitigating circumstance, ladies and gentlemen, if you find that Ernest West Basden suffered from major depression, chronic pain from health problems, and substantial drug use including the day this crime was committed and that this impaired his ability to appreciate the criminality of his conduct or to conform his conduct to the requirement of the law.

Defendant in this case not only did not object to the challenged instruction, but in fact, requested it and stated he was satisfied with it. Moreover, in arguing to the jury, defendant presented all three factors as a whole to the jury in support of his diminished capacity defense. During closing argument defense counsel stated the following:

> You remember the testimony that was presented last week by Dr. Everhart who is an expert in psychology testified that based on the chronic pain, substantial drug use and major depression, that [defendant] was suffering from a mental or emotional distress or disturbance and that this did affect his ability or his thinking in the participation of this crime.

Having invited the error, defendant cannot now claim on appeal that he was prejudiced by the instruction. N.C.G.S. § 15A-1443(c). *See State v. Williams*, 333 N.C. 719, 728, 430 S.E.2d 888, 893 (1993).

Furthermore, read in its entirety the jury instruction is not misleading. The trial court had already informed the jury that defendant's "capacity to appreciate does not need to have been totally obliterated," and "defendant need not wholly lack all capacity to conform." Reading the jury instruction as a whole, we cannot say as a matter of law that the error, if any, rose to the level of plain error such that there is a reasonable probability that the result would have been different had the error not occurred. *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993).

**[9]** Defendant also contends the trial court erred by instructing the jury that it could refuse to consider the nonstatutory mitigating circumstance of good conduct in jail if it deemed the evidence had no mitigating value. Defendant argues that good adjustment to prison is a mitigating circumstance, which has mitigating value as a matter of law according to *Skipper v. South Carolina*, 476 U.S. 1, 90 L. Ed. 2d 1 (1986). Therefore, the jury had no discretion to deny it has mitigating value. We disagree.

In *Skipper*, the United States Supreme Court stated:

[T]he only question before us is whether the exclusion from the sentencing hearing of the testimony petitioner proffered regarding his good behavior during the over seven months he spent in jail awaiting trial deprived petitioner of his right to place before the sentencer relevant evidence in mitigation of punishment.

476 U.S. at 4, 90 L. Ed. 2d at 6. This Court recently noted that "[i]t is thus apparent that the fact that the jury in *Skipper* was not allowed to hear the evidence at all was of concern to the Supreme Court." *State v. Robinson*, 336 N.C. 78, 113, 443 S.E.2d 306, 323.

In the instant case, however, the record shows defendant was allowed to present evidence concerning his good behavior in prison. Chief Deputy of the Duplin County Sheriff's Department, Louis Glenn Jernigan, testified that defendant had been incarcerated at the Duplin County Jail for two or three months. During that time defendant never violated any of the prison rules and always behaved himself. In addition, Reverend Croom testified that he met defendant while making one of his regular visits to the Jones County Jail. Reverend Croom thereafter met with defendant on a regular basis and noticed a great

STATE v. BASDEN

[339 N.C. 288 (1994)]

change in him once he was saved. According to Reverend Croom, defendant counseled other inmates in the jail. Reverend Croom felt that defendant could be very useful in prison by serving the Lord and helping inmates.

Defendant was allowed, in accordance with *Skipper*, to place evidence of his good behavior in jail before the jury for consideration. *Skipper* does not require this Court to overrule its precedents holding that jurors are allowed to reject any nonstatutory mitigating circumstance which they do not deem to have mitigating value. *See State v. Robinson*, 336 N.C. 78, 117, 443 S.E.2d 306, 325; *State v. Gay*, 334 N.C. 467, 492, 434 S.E.2d 840, 854 (1993); *State v. Hill*, 331 N.C. 387, 418, 417 S.E.2d 765, 780 (1992), *cert. denied*, —— U.S. ——, 123 L. Ed. 2d 503 (1993). We conclude the trial court did not err in its instruction on the nonstatutory mitigating circumstance of good conduct in jail. Accordingly, this assignment of error is overruled.

[10] Defendant also contends the trial court erred by permitting the prosecutors to make grossly improper arguments to the jury which included incorrect statements of the law and personal opinions about matters not in evidence.

Because defendant did not object to the State's closing argument at trial, "review is limited to the narrow question of whether the prosecutor's statements were so grossly improper as to require the trial judge to correct them *ex mero motu*." *State v. Olson*, 330 N.C. 557, 567, 411 S.E.2d 592, 597 (1992).

Defendant assigns error to the following arguments:

Now, some of these mitigating circumstances, ladies and gentlemen, really border on the ridiculous, but the law says that we have to put in here any mitigating circumstances that his lawyer can think of that they can put on any evidence to support. . . .

. . . .

. . . Mr. Andrews earlier told you about battle ships, our battle ships and they're row boats. And he told you that I would be talking about what they called the mitigating circumstances and I wanted to discuss them a little bit. I'm going down them one by one and discuss each of those things and quite frankly some of those row boats have leaks in them and I think when you look at them, you'll take them for what they're worth, but the law requires that they, that we submit all the mitigating factors that they want to submit.

**STATE v. BASDEN**

[339 N.C. 288 (1994)]

Defendant contends that these arguments misstated the law governing mitigating circumstances and belittled defense counsels' role in the sentencing phase of trial. The trial court must submit any relevant mitigating circumstances supported by substantial evidence which could be a basis for a sentence less than death. N.C.G.S. § 15A-2000(b) (1988); *Penry v. Lynaugh,* 492 U.S. 302, 106 L. Ed. 2d 256 (1989). Therefore, the prosecutor's description of the law of mitigating circumstances was not so grossly improper as to require the trial court to intervene *ex mero motu.*

Furthermore, as to the comment that some of defendant's mitigating circumstances "border on the ridiculous," prosecutors may legitimately attempt to deprecate or belittle the significance of mitigating circumstances. In *State v. Robinson,* the prosecutor argued defendant's mitigating circumstances could be categorized into two groups as "[s]ociety made me do it" or "[m]y family made me do it" and the mitigating evidence was nothing more than an "evasion of responsibility." 336 N.C. at 128, 443 S.E.2d at 331. This Court held the arguments were not an improper denegation of mitigating evidence but constituted legitimate argument on the weight of defendant's evidence. *Id.* at 129, 443 S.E.2d at 332.

[11] Defendant's next contention is the prosecutor impermissibly argued his own personal beliefs based on facts not in evidence. First, defendant contends the prosecutor improperly argued the only way the jury could prevent defendant from killing again was to give him the death penalty. In *State v. Lee,* 335 N.C. 244, 439 S.E.2d 547, *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 162, 63 USLW 3264, *reh'g denied,* —— U.S. ——, 130 L. Ed. 2d 532, 63 USLW 3422 (1994), this Court held that this exact argument was proper. Accordingly, defendant's assignment of error on this ground is overruled.

Second, defendant contends the prosecutor improperly referred to defendant as a "mad dog killer." This comment, however, was in rebuttal of defendant's position that he was a nonviolent person who was dominated and easily led into committing the murder by Linwood Taylor. We do not believe that the statement was grossly improper. *See State v. Ali,* 329 N.C. 394, 407 S.E.2d 183 (1991) (no prejudice from prosecutor's reference to defendant as an "animal").

Third, defendant contends the prosecutor inflamed the jury by mocking defendant's procedural and substantive constitutional rights. The inflammatory language reads as follows:

STATE v. BASDEN

[339 N.C. 288 (1994)]

That man is getting every right in the book. He's been fed. He's had a warm place to stay. He's had the best health care money can buy. He's not got one lawyer, but he's got two lawyers to defend him. He has a $200 an hour psychologist. And all the visits from family and friends he can stand. He's been having all of that for the last fourteen months. . . . [The victim] never had the opportunity to be presumed innocent. He never had a trial that lasted four weeks and had two phases. He never had the lawyers, two lawyers to plead for his life. Billy White never had an opportunity to stand here as Ernest Basden did and tell you that he was sorry and in effect plead for his life. Billy White never had that opportunity. He didn't have a judge out there on that dirt road in Jones County to make sure that Billy White had a fair trial. And there weren't twelve of you out there to decide his fate. There was just one person. He had no sentencing hearing like we're doing right now.

Defendant argues that this argument penalized defendant for exercising his constitutional rights to the presumption of innocence, the assistance of counsel, to a trial by jury, and to the assistance of an expert upon a proper showing. In *State v. Green*, 336 N.C. 142, 443 S.E.2d 14, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 547, 1994 WL 557502 (1994), we held that an argument very similar to this one was not improper. In light of *Green*, we conclude no gross impropriety occurred here.

[12] Fourth, defendant contends the prosecutor improperly injected the law that the State could not call any of the victim's family as witnesses into the jury's consideration. This was irrelevant to the sentencing decision and was only done to invoke sympathy for the victim, the very reason such evidence is excluded. In *State v. McCollum*, 334 N.C. 208, 433 S.E.2d 144 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 895, *reh'g denied*, —— U.S. ——, 129 L. Ed. 2d 924 (1994), the prosecutor made reference to the victim and the victim's family in a far more severe manner than the statements in this case. In *McCollum*, the prosecutor repeatedly asked the jury during the capital sentencing proceeding to imagine the eleven-year-old victim as their own child and emphasized that the child's father wanted revenge. This Court found that the argument was not grossly improper. In light of *McCollum*, we conclude that the prosecutors' arguments were not grossly improper.

[13] Fifth, defendant contends the prosecutor improperly asked the jury to step into the shoes of the victim by arguing the following:

STATE v. BASDEN

[339 N.C. 288 (1994)]

30 pieces of silver taken from the bible was all it took for him to turn over and end Billy White's life and the scary thing, the dangerous thing about that man right there is that it could have just as easily been any of you if somebody was willing to pay the price. Any one of you.

In *State v. Jones*, 336 N.C. 229, 443 S.E.2d 48, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 423, 1994 WL 512611 (1994), *reh'g denied*, —— U.S. ——, 130 L. Ed. 2d 676 (1995), the prosecutor argued during a capital sentencing proceeding that the victim, who was killed during a convenience store robbery, was "[a]n innocent customer, innocent people like you and like me were not going to deter him. . . . It could have been anybody. . . . [C]ould have been you, if you had been in that store." *Id.* at 251, 433 S.E.2d at 59. This Court found no gross impropriety because "[t]he argument sought to illustrate the cold, calculated thought processes and actions displayed by the defendant." *Id.* at 252, 433 S.E.2d at 59. Based on our decision in *Jones*, we find no impropriety with the prosecutor's argument.

Finally, defendant contends the prosecutor improperly argued to the jury that defendant had a $200 an hour psychologist. Based on our conclusions under the guilt-innocence phase issues above, this argument has no merit. Accordingly, defendant is not entitled to relief on this ground.

PRESERVATION ISSUES

[14] Defendant raises four additional issues which he concedes have been decided against him by this Court. First, defendant contends the trial court erred when it failed to rule that the North Carolina death penalty statute is unconstitutional. Defendant acknowledges that this issue was decided against him in *State v. Rook*, 304 N.C. 201, 283 S.E.2d 732 (1981), *cert. denied*, 455 U.S. 1038, 72 L. Ed. 2d 155 (1982).

[15] Next defendant contends the trial court erred by permitting jurors to reject nonstatutory mitigating circumstances as having no mitigating value. This Court held to the contrary in *State v. Robinson*, 336 N.C. 78, 443 S.E.2d 306; *State v. Gay*, 334 N.C. 467, 434 S.E.2d 840; and *State v. Hill*, 331 N.C. 387, 417 S.E.2d 765.

[16] Defendant also contends the trial court erred when it instructed that each juror "may" consider any mitigating circumstance found in sentencing issue two when answering issues three and four. Defendant argues that this instruction made consideration of established mitigation discretionary with the capital sentencing jurors in violation of the Eighth Amendment. We have recently addressed and

rejected arguments identical to those made by defendant in support of this assignment of error. *State v. Green,* 336 N.C. 142, 443 S.E.2d 14; *State v. Lee,* 335 N.C. 244, 439 S.E.2d 547.

**[17]** Finally, defendant contends the trial court erred in denying defendant's motion that a life sentence be imposed. Defendant argues the jury had deliberated more than a reasonable amount of time and had asked if it could sentence defendant to life without parole. Defendant acknowledges that this issue was decided against him in *State v. McLaughlin,* 323 N.C. 68, 372 S.E.2d 49 (1988), *sentence vacated on other grounds,* 494 U.S. 1021, 108 L. Ed. 2d 601 (1990), *on remand,* 330 N.C. 66, 408 S.E.2d 732 (1991).

We have considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. Therefore, we overrule these assignments of error.

Finally, we note that defendant has raised three assignments of error based on his petition for writ of certiorari filed contemporaneous with the Record on appeal, that the trial court improperly amended the trial transcript on appeal. Defendant briefs these issues as if the transcript was not amended on appeal. As we have denied defendant's petition for certiorari arguing that the transcript was improperly amended, we do not address defendant's issues based on the transcript prior to its being amended.

PROPORTIONALITY

**[18]** Having found defendant's trial and capital sentencing proceeding free of prejudicial error, we are required by statute to review the record and determine (i) whether the record supports the jury's finding of the aggravating circumstances upon which the court based its sentence of death; (ii) whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (iii) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and defendant. N.C.G.S. § 15A-2000(d)(2) (1988); *State v. Sexton,* 336 N.C. 321, 376, 444 S.E.2d 879, 910-11, *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 429, 1994 WL 571603 (1994).

In this case, the jury found the sole aggravating circumstance that the murder was committed for pecuniary gain. N.C.G.S. § 15A-2000(e)(6). We conclude the evidence supports the jury's finding of this aggravating circumstance. After thoroughly reviewing the record, transcripts, and briefs submitted by the parties, we further

conclude there is nothing to suggest the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor.

We turn now to our final statutory duty of proportionality review and "determine whether the death sentence in this case is excessive or disproportionate to the penalty imposed in similar cases, considering the crime and the defendant." *State v. Brown*, 315 N.C. 40, 70, 337 S.E.2d 808, 829 (1985), *cert. denied*, 476 U.S. 1165, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988). We compare similar cases from a pool of

> *all cases* arising since the effective date of our capital punishment statute, 1 June 1977, which have been tried as capital cases and reviewed on direct appeal by this Court and in which the jury recommended death or life imprisonment or in which the trial court imposed life imprisonment after the jury's failure to agree upon a sentencing recommendation within a reasonable period of time.

*State v. Williams*, 308 N.C. 47, 79, 301 S.E.2d 335, 355, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177, *reh'g denied*, 464 U.S. 1004, 78 L. Ed. 2d 704 (1983). The pool, however, includes only those cases which have been affirmed by this Court. *State v. Stokes*, 319 N.C. 1, 19-20, 352 S.E.2d 653, 663 (1987). We have also recently clarified the composition of the pool so that it accounts for post-conviction relief awarded to death-sentenced defendants. *See State v. Bacon*, 337 N.C. 66, 446 S.E.2d 542 (1994).

> Because the "proportionality pool" is limited to cases involving first-degree murder convictions, a post-conviction proceeding which holds that the State may not prosecute the defendant for first-degree murder or results in a retrial at which the defendant is acquitted or found guilty of a lesser included offense results in the removal of that case from the "pool." When a post-conviction proceeding results in a new capital trial or sentencing proceeding, which, in turn, results in a life sentence for a "death-eligible" defendant, the case is treated as a "life" case for purposes of proportionality review. The case of a defendant sentenced to life imprisonment at a resentencing proceeding ordered in a post-conviction proceeding is similarly treated. Finally, the case of a defendant who is either convicted of first-degree murder and sentenced to death at a new trial or sentenced to death in a resentencing proceeding ordered in a post-conviction proceeding,

**STATE v. BASDEN**

[339 N.C. 288 (1994)]

which sentence is subsequently affirmed by this Court, is treated as a "death-affirmed" case.

*Id.* at 107, 446 S.E.2d at 564. "[A] conviction and death sentence affirmed on direct appeal is presumed to be without error, and . . . a post-conviction decision granting relief to a convicted first-degree murderer is not final until the State has exhausted all available appellate remedies." *Id.* at 107 n.6, 446 S.E.2d at 564 n.6.

This Court has held the death penalty to be disproportionate in only seven cases. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). Of these seven cases, three involved the pecuniary gain aggravating circumstance in a robbery murder: *State v. Benson, State v. Young*, and *State v. Jackson*. However, none of these cases is similar to the present case.

In *Benson*, the victim died of a cardiac arrest after being robbed and shot in the legs by defendant. The jury found the aggravating circumstance that the crime was committed for pecuniary gain. This Court found the death penalty disproportionate because defendant was convicted solely on the theory of felony murder and the evidence that he fired at the victim's legs tended to show that he intended only to rob the victim. Further, defendant pleaded guilty during the trial and acknowledged his wrongdoing before the jury. In the present case, defendant was convicted on the theory of premeditation and deliberation. Defendant planned the murder well in advance to collect a share of the victim's life insurance proceeds.

In *Young*, the defendant, who had been drinking heavily all day, suggested to two accomplices that they rob and kill the victim so they could buy more liquor. The jury found as aggravating circumstances that the murder was committed for pecuniary gain and during the course of a robbery or burglary. We find it significant that the defendant in *Young* was only nineteen years old at the time of the crime, whereas defendant here was forty. In addition, as noted above, defendant planned this murder well in advance of the crime and the motive was not to rob but to obtain money as the consequence of the death.

In *Jackson*, the defendant waived down the victim as the victim passed in his truck. The victim was later discovered in his truck. He had been shot twice in the head and his wallet was gone. The aggravating circumstance found was that the murder was committed for pecuniary gain. In finding the death sentence disproportionate, we emphasized the fact that there was "no evidence of what occurred after defendant left with [the victim]" in his automobile. 309 N.C. at 46, 305 S.E.2d at 717. Here, by contrast, the evidence tended to show that defendant carefully planned and executed the killing to collect life insurance proceeds.

For all the foregoing reasons, we conclude that this case is not similar to any of the above cases, where the death penalty was found to be disproportionate.

Defendant relies on a case in which a contract killer received a life sentence. *State v. Lowery*, 318 N.C. 54, 347 S.E.2d 729 (1986). In *Lowery*, the defendant was hired by James Small to kill Small's wife. Defendant strangled and stabbed the victim to death. The jury found the aggravating circumstances that the murder was committed for pecuniary gain and that the murder was especially heinous, atrocious, or cruel. In mitigation, the jury found defendant's capacity to appreciate the criminality of his conduct was impaired under N.C.G.S. § 15A-2000(f)(6). In the present case, however, the jury specifically rejected the (f)(6) mitigating factor thereby finding defendant could and did appreciate the criminality of his conduct.

In the present case the jury found two statutory and five nonstatutory mitigating circumstances, namely, (i) the murder was committed while defendant was under the influence of mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2); (ii) defendant acted under the domination of another person, N.C.G.S. § 15A-2000(f)(5); (iii) defendant has expressed remorse and concern for the death of the victim and is repentant; (iv) defendant willingly assumed responsibility for his conduct; (v) defendant exhibited religious beliefs and practices since incarceration; (vi) defendant was under stress at the time he committed the offense; (vii) defendant confessed to law enforcement officers at an early stage of the investigation; (viii) defendant cooperated with law enforcement officers at an early stage of the investigation; and (ix) defendant's character and prior conduct were inconsistent with the crime. The jury rejected two statutory mitigating circumstances and six nonstatutory mitigating circumstances.

**STATE v. BASDEN**

[339 N.C. 288 (1994)]

In comparing this case to similar cases in the pool, however, we emphasize that the proportionality analysis is not merely a mathematical comparison of the number of aggravating and mitigating circumstances in each case. *State v. Payne*, 337 N.C. 505, 540, 448 S.E.2d 93, 114. Furthermore, "the fact that one, two, or several juries have returned recommendations of life imprisonment in cases similar to the one under review does not automatically establish that juries have 'consistently' returned life sentences in factually similar cases." *State v. Green*, 336 N.C. 142, 198, 443 S.E.2d 14, 46-7. Instead, this Court compares each case with "roughly similar" cases focusing on "the manner in which the crime was committed and defendant's character, background, and physical and mental condition." *State v. Lawson*, 310 N.C. 632, 648, 314 S.E.2d 493, 503 (1984), *cert. denied*, 471 U.S. 1120, 86 L. Ed. 2d 267 (1985).

The proportionality pool currently includes two cases in which this Court has upheld death sentences for contract killings committed under remarkably similar circumstances. *State v. Bacon*, 337 N.C. 66, 446 S.E.2d 542; *State v. Hunt*, 323 N.C. 407, 373 S.E.2d 400 (1988), *sentence vacated and case remanded in light of McKoy*, 494 U.S. 1022, 108 L. Ed. 2d 602 (1990), *on remand*, 330 N.C. 501, 411 S.E.2d 806 (death sentence reinstated, *McKoy* error deemed harmless), *cert. denied*, —— U.S. ——, 120 L. Ed. 2d 913 (1992).

In *Bacon*, the defendant and Bonnie Sue Clark planned to murder Clark's husband for the purpose of collecting his life insurance proceeds. Clark enticed the victim into a car where defendant stabbed him sixteen times with a knife. The jury found the only aggravating circumstance submitted, that the murder was committed for pecuniary gain. The jury also found nine mitigating circumstances but refused to find that defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the law was impaired. This Court found the death sentence proportionate and emphasized that the case "involve[d] a cold, calculated, unprovoked killing, committed for the purpose of collecting life insurance proceeds." 337 N.C. at 108, 446 S.E.2d at 565.

Similarly, in this case the jury found only one aggravating circumstance, that the murder was committed for pecuniary gain, and nine mitigating circumstances. The jury here also rejected the (f)(6) mitigating circumstance, finding defendant's capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of the law was not impaired. Furthermore, as in *Bacon*, the

defendant here planned and committed a cold, calculated, unprovoked killing, in the hope of receiving a portion of the victim's life insurance proceeds.

In *Hunt*, the defendant had also been hired by a woman to kill her husband. Defendant killed the husband by shooting him with a pistol. Hunt also murdered a second person within a week of the first murder. At sentencing, the jury found as aggravating circumstances that the defendant had previously been convicted of a felony involving the threat of violence to the person and that the murder was committed for pecuniary gain. This Court upheld the death sentence and emphasized that the murder was a contract killing. 323 N.C. at 436, 373 S.E.2d at 418. Therefore, both *Bacon* and *Hunt* recognize the death penalty as a proportionate punishment for a contract killing.

We hold defendant received a fair trial and capital sentencing proceeding free of prejudicial error and that the death penalty is not disproportionate.

NO ERROR.