LEVINSON, Judge.
Defendant (Anne Johnson Mabe) appeals from conviction and judgment for embezzlement of $100,000 or more. We hold that defendant received a fair trial, free of prejudicial error.
The evidence at defendant's trial tended to show the following: Between 1998 and 2001, defendant worked as an office manager at Paper Stock Dealers, Incorporated. Paper Stock Dealers is in the business of purchasing waste paper products. As part of its business, the company pays for deliveries of waste paper. The value of a delivery is determined by the weight and grade of the waste paper being delivered; trucks are weighed before and after unloading. Cash payments are made from a cash drawer; checks are prepared for non-cash purchases. Defendant's duties at Paper StockDealers included overseeing the weighing process, calculating the price to be paid to customers, making cash payments to customers from the cash drawer, replenishing the cash drawer with funds held at the company's bank, reconciling the cash drawer, writing checks, paying bills, and keeping reports of receipts and shipments.
Company policy established the amount of currency to be placed in the cash drawer. When cash was paid out of the cash drawer for delivered paper products, the weight ticket for the delivery was placed in the cash drawer; each ticket included information on the amount paid for the particular delivery. Cash from the cash drawer was also used to make small purchases of supplies. When this occurred the receipt from the supply purchase was required to be placed in the cash drawer. Prior to being replenished with funds from the bank, the cash drawer would be reconciled by comparing the amount placed in the drawer pursuant to the company's policy with the sum of the remaining currency in the drawer and expenditures represented by weight tickets and receipts. The sum of the remaining cash and authorized expenditures should have equaled the amount authorized to be placed in the drawer. A check would then be prepared to cover the amount of cash that needed to be placed back in the drawer. The bank would cash this check and the funds in the drawer would be replenished.
An audit revealed that, during defendant's time as office manager, Paper Stock Dealers experienced a loss of funds from the cash drawer. Specifically, defendant drafted the replenishment checks for amounts greater than were needed to equalize the amountof cash paid out for waste paper deliveries and other supplies. The difference was not returned to the company. According to the company's accountants, this practice resulted in missing funds totaling $129,068.83 between 1998 and 2001: $41,472.64 in 1998, $42,909.84 in 1999, $40,146.85 in 2000, and $4,539.50 during January and February of 2001.
The cash drawer was locked in a safe during non-working hours and was kept in the desk in defendant's office during working hours. Defendant's office was located inside of a building containing a conference room, other offices, a bathroom, and a kitchen. Though access to defendant's office from inside of the building was not restricted, access to the building from the outside was secured by a door, which opened from the inside by an electronic mechanism. In addition to defendant, two other employees had access to the cash drawer: plant manager David Partin and Marty Dunn, an employee who handled defendant's responsibilities when defendant was on a break or out of the office. After speaking to these employees, company officials were unable to link Partin or Dunn to the missing funds. Indeed, Dunn had prepared only one replenishment check during the relevant period, and that check had been drafted in an amount equal to the amount of cash paid out for waste paper deliveries and other supplies. Partin testified that he did not review defendant's work on reconciliations and that he was not aware of any missing funds until receiving a call from the area manager. The president of Paper Stock Dealers, James Boyd, Jr., and a human resources manager, Grady Weaver, interviewed defendant about the missing funds. Boyd testified that, upon being confronted and asked to tally some numbers on a reconciliation sheet, defendant became nervous, but accurately tallied the numbers. Defendant acknowledged error in the reconciliation, but blamed the problem on the computer. Boyd testified that the computer error proposed by defendant would have resulted in a significant amount of excess cash. When asked what happened to the excess cash that would have been withdrawn, defendant stated, "I don't know where the money is." Defendant told Boyd and Weaver that she did not do anything wrong and offered to take action to assure them of her innocence.
There was also evidence that defendant deposited nine checks made payable to the company into her personal account without being authorized to do so. The total amount of these checks was approximately $3,000. In addition, defendant drafted nine unauthorized checks on the company's account made payable to defendant in the amount of $200. Defendant also used the company credits card for personal use; her unapproved purchase balance on the credit cards was approximately $7,800.
Detective Kenneth Rickard of the Greensboro Police Department conducted a criminal investigation into the missing funds. In an interview with Rickard, defendant admitted to taking some money from Paper Stock Dealers, but indicated that she replaced the funds. Defendant was unable to tell the detective exactly how much money she had taken. In response to a question, defendantindicated that "[p]erhaps" she had taken $500 per week, though she later indicated that she could not have taken that much. Defendant also admitted to purchasing personal items with the company's credit cards. Further investigation by Detective Rickard revealed that defendant's bank accounts received cash deposits of $35,912.08 in 1998, $43,007.98 in 1999, $23,849 in 2000, and $2,350 in 2001. These deposits did not include any deposited checks or account transfers.
Defendant took the stand in her own defense. She admitted to taking money from the cash drawer and depositing it in her personal bank account. However, defendant estimated that the total amount taken did not exceed $30,000 or $35,000. Defendant also admitted to writing company checks to herself, though she characterized these as unauthorized loans. Defendant insisted that she repaid these loans by placing cash in the cash drawer, but acknowledged that doing so should have resulted in cash overages that were not recorded.
A jury convicted defendant of embezzlement of $100,000 or more. The trial court imposed a mitigated sentence of seventy to ninety-three months imprisonment. Defendant now appeals.
_________________________________
We first address defendant's argument that the trial court erred in denying her motion to dismiss the charge of embezzling $100,000 or more. We are unpersuaded by this contention.
When ruling on a motion to dismiss, the trial court must determine whether the prosecution has presented "substantialevidence of each essential element of the crime." State v. Call, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998) (citation omitted). "Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion." State v. Robinson, 355 N.C. 320, 336, 561 S.E.2d 245, 255-56, cert. denied, 537 U.S. 1006, 154 L. Ed. 2d 404 (2002) (citation omitted). "In considering a motion to dismiss, the trial court must analyze the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from the evidence." Id. (citation omitted). "The trial court must also resolve any contradictions in the evidence in the State's favor." Id. (citation omitted). "The trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility." Id. (citation omitted). "[T]he rule for determining the sufficiency of evidence is the same whether the evidence is completely circumstantial, completely direct, or both." State v. Wright, 302 N.C. 122, 126, 273 S.E.2d 699, 703 (1981).
To convict a defendant of embezzlement, the State must prove (1) that the defendant, acting as an agent, (2) received property of her principal in the course of her agency; and (3) embezzled or fraudulently or knowingly and willfully misapplied or converted such property to her own use. See N.C.G.S. § 14-90 (2003); State v. Block, 245 N.C. 661, 663, 97 S.E.2d 243, 244 (1957). Pursuant to G.S. § 14-90, an offender is guilty of a Class C felony, rather than a Class H felony, if the value of the property embezzled is $100,000 or greater. In the instant case, defendant contends that the State did not present any evidence of a conversion of $100,000 or more or of the defendant being the perpetrator of any such conversion. However, the evidence at trial tended to show that, between 1998 and 2001, defendant prepared replenishment checks for amounts that totaled $129,068.83 in excess of the amount of cash that actually needed to be added to her employer's cash drawer. The excess funds could not be accounted for, and defendant made approximately $105,000 in cash deposits during the same period of time. The State's evidence tended to exclude the possibility that anyone other than defendant removed the missing funds from the cash drawer. Moreover, defendant's unauthorized depositing of checks made out to her employer into her personal accounts, improper drafting of company checks made payable to herself, and unsanctioned use of the company credit card further inculpated her in the embezzlement. In addition, defendant testified that she had taken some money from the cash drawer and admitted to Detective Rickard that she had "[p]erhaps" taken as much as $500 per week, though she later questioned that figure. This evidence, considered in the light most favorable to State, amply supported a verdict of guilty of embezzlement of $100,000 or more. This assignment of error is overruled.
________________________________
We next address defendant's argument that the trial court committed plain error in instructing the jury that it couldconsider evidence of a confession where such an instruction was not supported by the evidence. We are unpersuaded by this contention.
Detective Rickard testified that he interviewed defendant as part of his investigation. He described his conversation with defendant as follows:
Through the course of the interview, she admitted that she had taken some money, some cash, but that she had put it back in [the cash drawer]. . . . I asked her how much money she had taken over the course of time. She wasn't able to tell me that. I suggested five hundred dollars a week. She said, "Perhaps." I did the math for five hundred dollars a week times fifty weeks times five years at one hundred and twenty five thousand dollars. . . . She said, "No." That was too much. . . . It was not that much. . . . [S]he suggested maybe it was two hundred and fifty dollars a month. I did the math for that. It came out to thirty thousand dollars. She suggested that she put half of that back, for a loss of fifteen thousand dollars.
Defense counsel requested jury instructions on admissions and confessions. The prosecutor argued that giving an instruction on both admissions and confessions would be redundant, favoring instead only an instruction on confessions. Defense counsel responded, "We'd like to bear the burden of redundancy[.]" In accordance with defendant's request, the trial court instructed the jury as follows:
There is evidence which tends to show that the defendant confessed that she committed the crime charged in this case. If you find that the defendant made that confession, then you should consider all of the circumstances under which it was made in determining whether it was a truthful confession and the weight you will give to it.
Defendant did not object to this instruction.
Our appellate courts "consistently den[y] appellate review to defendants who have attempted to assign error to the granting oftheir own requests." State v. Bell, ___ N.C. ___, ___, 603 S.E.2d 93, 115 (2004). It follows that where, as here, a defendant has invited an alleged instructional error, she cannot claim on appeal that she was prejudiced by the instruction. See State v. Basden, 339 N.C. 288, 303, 451 S.E.2d 238, 246 (1994).
Moreover, the trial court did not commit plain error in giving the confession instruction. Trial judges are limited to giving instructions that are "based upon a state of facts presented by some reasonable view of the evidence." State v. Cannon, 341 N.C. 79, 89, 459 S.E.2d 238, 244-45 (1995) (citation omitted). For a confession instruction to be warranted, there must be evidence of a "'[v]oluntary statement made by one who is [a] defendant in [a] criminal trial at [a] time when he is not testifying in trial and by which he acknowledges certain conduct of his own constituting [a] crime for which he is on trial; a statement which, if true, discloses his guilt of that crime.'" Id. (quoting Black's Law Dictionary 296 (6th ed. 1990)). In the instant case, defendant was charged with the crime of embezzlement of more than $100,000. She made a statement to Detective Rickard indicating that "perhaps" she had taken as much as $500 per week from her employer for five years, which equals approximately $125,000. As such, the trial court's confession instruction was supported by the evidence presented at trial. Furthermore, even assuming arguendo that the trial court's instruction was erroneous, we are unpersuaded that it constitued "a fundamental error, something so basic, so prejudicial that justice cannot have been done" or that "this [alleged]instructional mistake had a probable impact on the jury's finding that the defendant was guilty." See State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citations and internal quotation marks omitted). As such, defendant has not demonstrated plain error with respect to this issue. This assignment of error is overruled.
____________________________________
We next address defendant's argument that she is entitled to a new sentencing hearing because the trial court "erroneously considered matters that are inherent in the offense in determining the severity of her sentence." We are unpersuaded by this contention.
Defendant was convicted of a Class C felony. The trial court found that she had a Level II prior record level, which carries a presumptive mandatory minimum sentence of eighty to 100 months imprisonment. However, the trial court found as a mitigating factor that defendant voluntarily acknowledged wrongdoing prior to arrest and imposed a mitigated sentence of seventy to ninety-three months imprisonment. After imposing this sentence, the trial court made the following remarks:
The statute [G.S. § 14-90] is very rough. It's a very punitive statute. . . . But it's intended for corporate people who steal from businesses and destroy them. I don't know how many employees that were out there at this Paper Stock Dealers, but all of their jobs were jeopardized by this, and their livelihoods. We have to- I have to consider that, and the law does too. That's probably why it's so serious . . . because businesses fail because of things like this. I've seen it many times. And when the business fails, then all the suppliers and all the people that work there lose theirjobs, and the ripples-the effects spread throughout society.
Defendant insists that this statement demonstrates that the trial court imposed an unduly harsh sentence based upon improper consideration of matters that are inherent in the offense of embezzlement.
We observe that the trial court's ruminations do not appear to be an indication that the court was relying on improper matters in determining defendant's sentence. Rather, our review of the record reveals that the trial court was explaining to the defendant and her counsel why embezzlement is a serious offense and why the General Statutes prescribe such a serious punishment for it. Moreover, contrary to defendant's assertions on appeal, we are unpersuaded that the considerations mentioned by the trial court are necessarily inherent elements of the crime of embezzlement. However, even assuming arguendo that the harm caused to businesses, employees, and society by embezzlement are inherent elements of the offense, we note that defendant's argument as to the harshness of her sentence is severely compromised by the fact that she received a mandatory minimum sentence in the mitigated range. As such, defendant's reliance on cases holding that a trial court may not aggravate a sentence based on consideration of factors that are "the very essence of" or "inherent in" the underlying conviction is misplaced. See generally State v. Higson, 310 N.C. 418, 424, 312 S.E.2d 437, 441 (1984); State v. Baldwin, 139 N.C. App. 65, 73-74, 532 S.E.2d 808, 814-15 (2000). In the instant case, the trial court found that a mitigating factor was present and imposed a sentence with a minimum term of imprisonment within the mitigated range. We reject defendant's contention that the trial court enhanced her sentence based on consideration of matters that are inherent in the embezzlement for which she was convicted. This assignment of error is overruled.
In addition, we have carefully reviewed the remaining assignments of error brought forward in defendant's brief and have found them to be without merit. They are, therefore, overruled.
No error.
Judges TYSON and BRYANT concur.
Report per Rule 30(e).