IN THE SUPREME COURT OF NORTH CAROLINA

No. 289PA23

Filed 21 March 2025

STATE OF NORTH CAROLINA

v.

KAYLORE FENNER

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, No. COA23-6 (N.C. Ct. App. Sept. 19, 2023), finding no error after appeal from judgments entered on 11 March 2022 by Judge Paul C. Ridgeway in Superior Court, Wake County. Heard in the Supreme Court on 30 October 2024.

*Jeff Jackson, Attorney General, by Sherri Horner Lawrence, Special Deputy Attorney General, for the State-appellee.*

*Glenn Gerding, Appellate Defender, by Wyatt Orsbon, for defendant-appellant.*

DIETZ, Justice.

Shortly before trial on numerous felony charges, defendant Kaylore Fenner told the trial court that he wanted to waive his right to counsel and represent himself. When a criminal defendant asks to do so, a state statute requires the trial court to discuss the right to counsel and the consequences of waiving it. N.C.G.S. § 15A-1242 (2023). Among the conditions listed in § 15A-1242 is a requirement that the trial court ensure the defendant comprehends the "range of permissible punishments" that could

be imposed for the charged offenses. *Id.*

When the trial court engaged in this statutory colloquy with Fenner, the court informed him that he faced 75 to 175 years in prison. That was a miscalculation. After the jury found Fenner guilty, he was sentenced to 121 to 178 years in prison. A theoretical defendant with an even worse criminal history could have received five consecutive life sentences plus several more years in prison if convicted on those same charges.

Fenner appealed and sought a new trial, arguing that the trial court erred by miscalculating the range of possible punishments he faced. The Court of Appeals affirmed Fenner's criminal judgments, holding that Fenner "was aware he was facing a life sentence." *State v. Fenner*, No. COA23-6, slip op. at 12 (N.C. Ct. App. Sept. 19, 2023) (unpublished).

We agree with this portion of the Court of Appeals' reasoning. As a practical matter, the upper limit to the range of any criminal defendant's period of incarceration is the remainder of the defendant's natural life. If the trial court miscalculates the range of permissible incarceration during the statutory colloquy but both the miscalculation and the actual range are tantamount to the remainder of the defendant's life, the trial court complies with the statute. That is what occurred here because the court informed Fenner, who was nearly thirty years old at the time of the offenses, that he faced 75 to 175 years in prison, which is tantamount to the remainder of his life. Accordingly, as modified below, we affirm the decision of the

Court of Appeals.

**Facts and Procedural History**

In 2021, defendant Kaylore Fenner kidnapped, assaulted, and raped his own mother. The State charged Fenner with many serious criminal offenses including forcible rape, kidnapping, robbery, and breaking or entering to terrorize and injure. Many of the charged offenses were Class B1 felonies, which carry some of the highest punishments under our structured sentencing statutes. *See* N.C.G.S. § 15A-1340.17 (2023).

At a pre-trial hearing, Fenner asked to represent himself for the remainder of the case. Before addressing Fenner directly, the trial court asked the State for its view of the "exposure that the defendant has if convicted." The State explained that Fenner was charged with multiple B1 felonies and "all told, total[,] he is facing a life sentence." The trial court then calculated the maximum possible sentence for the Class B1 felony charges and informed Fenner that he faced the possibility of 300 to 420 months in prison for each charge:

> THE COURT: Okay. I'm going to deal with the B1s, I do believe that's pertinent. So, therefore, his exposure if he were convicted by a jury of his peers on the high end of the aggravated range would be 300 months minimum, I believe, to 420 months maximum and that's for each charge of the B1 felonies.

The trial court then put Fenner under oath and engaged in the statutory colloquy required by N.C.G.S. § 15A-1242, including exchanges with Fenner concerning his capacity to represent himself, whether he was under the influence of

any substances, whether he had any mental or physical impairments, whether he understood that he was entitled to a court-appointed attorney, whether he understood that he would have to follow the same rules of evidence and procedure as a licensed attorney, and whether he understood the range of permissible punishments he faced for the charged offenses.

When addressing the range of permissible punishments, the trial court again explained that Fenner faced 300 to 420 months in prison for each Class B1 felony charge and that, in total, Fenner faced a possible punishment of 75 to 175 years in prison:

> THE COURT: And do you understand that if you were convicted — and I believe it's appropriate to focus on the B1 felonies. If you were convicted of the B1 felonies and if the State gives notice of aggravating factors and if a jury — I'm not saying they're going to, but if a jury of your peers were to convict you of the substantive offenses and also agree that there are aggravating factors, that a court could impose a sentence of 300 months minimum to 420 months maximum on each of the B1 felonies.
>
> THE DEFENDANT: Yes.
>
> . . . .
>
> [THE COURT:] Apparently — so there are five, and the court did read the charges. So there are five B1 felonies. At a minimum, that's 900 months at a minimum. So, therefore, that is 75 years that you could receive at a minimum if convicted of the B1 felonies if it's an aggravated offense and if a court were to run those consecutively. Do you understand that?
>
> THE DEFENDANT: Right. Yep. Yes.

> THE COURT: And I'm going to honor what the Supreme Court has said. I've given you the minimum. I'm going to also give you the maximum. And the maximum is 175 years.
>
> So now, with all of these things in mind, do you now wish to ask me any questions about what I've just said to you?
>
> THE DEFENDANT: No.

Later in the colloquy, the trial court again informed Fenner that he faced the possibility of 75 to 175 years in prison for the charged offenses:

> [THE COURT:] [A]re you sure you want me to release [court-appointed counsel] given your exposure of 75 years at a minimum to 175 years maximum? Which a court of competent jurisdiction can give you all of that. So is that what you want to do? Do you want to keep your lawyer?
>
> THE DEFENDANT: No, I'll be waiving my right to — to full representation almost exclusively for the reasons that you just named, aside from the exposure. Yeah, I'm competent—or I'm sure of my decision.

After completing this colloquy, the trial court permitted Fenner to represent himself and Fenner reviewed and signed a written waiver of counsel.

Several months later, the case went to trial and Fenner represented himself. The jury found Fenner guilty of all charges. After properly calculating the applicable sentencing ranges for all the convictions, the trial court sentenced him to a total of 121 to 178 years in prison.

Fenner appealed, arguing that the trial court failed to ensure that he understood the "range of permissible punishments" as required by N.C.G.S. § 15A-

1242. Fenner contended that the trial court only advised him "of the range of punishments for the five B1 felonies and not for all nine charges for which he was indicted" and that, as a result, the court mistakenly told him he faced 75 to 175 years in prison when in fact the court sentenced him to 121 to 178 years in prison and a theoretical defendant with the highest possible sentencing range for the charged offenses could have received multiple life sentences. *State v. Fenner*, No. COA23-6, slip op. at 6 (N.C. Ct. App. Sept. 19, 2023) (unpublished).

The Court of Appeals unanimously found no error. *Id.* Relying on earlier Court of Appeals precedent, the court held that the trial court's colloquy with Fenner complied with N.C.G.S. § 15A-1242 because Fenner "was aware he was facing a life sentence." *Id.* at 10, 12.

Fenner petitioned for discretionary review, arguing that the line of Court of Appeals precedent on which the court relied conflicted with this Court's precedent interpreting N.C.G.S. § 15A-1242. Specifically, the issue presented in the petition was whether the Court of Appeals "erred in concluding the trial judge didn't commit prejudicial error by failing to conduct the 'thorough inquiry' mandated by N.C.G.S. § 15A-1242 before allowing Mr. Fenner to waive his right to assistance of counsel and represent himself at trial."

We allowed discretionary review of that issue.

## Analysis

Criminal defendants have a constitutional right to represent themselves. *See*

*Faretta v. California*, 422 U.S. 806, 832–34 (1975); *State v. LeGrande*, 346 N.C. 718, 725 (1997). This constitutional right means that a criminal defendant must be allowed "to handle his own case without interference by, or the assistance of, counsel forced upon him against his wishes." *State v. Mems*, 281 N.C. 658, 670–71 (1972).

Of course, invoking this right to self-representation necessarily involves waiving another constitutional right—the right to counsel. *Faretta*, 422 U.S. at 835. Thus, before permitting a defendant to proceed without counsel, the trial court must ensure that the defendant is "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* (cleaned up).

To safeguard this constitutional right, the General Assembly enacted a statute titled "Defendant's election to represent himself at trial." N.C.G.S. § 15A-1242. The statute permits a defendant to "proceed in the trial of his case without the assistance of counsel" only after the trial judge has engaged in a "thorough inquiry" with the defendant and is satisfied that the defendant understands an enumerated list of rights and consequences of the decision. *Id.* Among these statutory criteria is the requirement that the defendant comprehends "the range of permissible punishments" that could be imposed at sentencing. *Id.*

This Court has never squarely addressed how a mistake or miscalculation in the range of possible punishments impacts the trial court's compliance with N.C.G.S. § 15A-1242. But there is a long line of Court of Appeals precedent addressing this

question, beginning with *State v. Gentry*, 227 N.C. App. 583 (2013).

In *Gentry*, the trial court miscalculated the defendant's maximum possible sentence by 14 years during the statutory colloquy. *Id.* at 600. The Court of Appeals acknowledged the mistake but nevertheless found no violation of N.C.G.S. § 15A-1242 because both the miscalculated sentence and the actual sentence were "tantamount to a life sentence." *Id.* The court observed that the "practical effect of either sentence" was "identical in any realistic sense." *Id.*

We agree with this portion of *Gentry*'s statutory analysis. As a practical matter, there is an upper limit to the range of any criminal defendant's period of incarceration. That upper limit is the life of the defendant. Because any remaining period of incarceration becomes meaningless after a defendant dies, the "range of permissible punishments" described in N.C.G.S. § 15A-1242 contains a ceiling equivalent to the defendant's natural life. If the trial court miscalculates the range of permissible punishments during the statutory colloquy but both the miscalculation and the actual range are tantamount to the remainder of the defendant's life, the trial court complies with the statute.

That is what occurred here. The trial court repeatedly informed Fenner that he faced a possible sentence of 75 to 175 years in prison. The actual sentence Fenner received was 121 to 178 years. The theoretical maximum sentence Fenner could have received (assuming a maximum prior record level and aggravating factors) was five consecutive sentences of life in prison plus an additional 53 to 71 years in prison.

N.C.G.S. § 15A-1340.17. Because Fenner was nearly thirty years old at the time, all of these sentencing ranges were tantamount to the remainder of Fenner's life.

Thus, although the range of punishments that the trial court discussed with Fenner was numerically inaccurate, the court complied with N.C.G.S. § 15A-1242. The court informed Fenner that, if convicted, he could spend the rest of his life in prison. That accurately conveyed the sentencing range that Fenner faced in this case and therefore confirmed that Fenner comprehended the range of permissible punishments. We therefore affirm the decision of the Court of Appeals, which found no error in the trial court's statutory colloquy under N.C.G.S. § 15A-1242.[1]

Fenner also makes several additional arguments to this Court that we briefly address. First, Fenner argues that the Court of Appeals decision wrongly held that N.C.G.S. § 15A-1242 does not require a "thorough inquiry" with the defendant concerning the range of permissible punishments so long as the defendant was " 'aware' of the information at the time he waived counsel."

That is not our reading of the Court of Appeals decision. In its decision, the court first engaged in an analysis of the trial court's own colloquy with Fenner and

---

[1] Another portion of *Gentry* suggests that a miscalculation in describing the range of permissible punishments under N.C.G.S. § 15A-1242, even if that miscalculation rose to the level of error under the statute, would not be a reversible error unless "there was a reasonable likelihood that the defendant might have made a different decision with respect to the issue of self-representation had he or she been more accurately informed." 227 N.C. App. at 600. Because we hold that there was no error in this case, we do not address whether this discussion in *Gentry* created a prejudice test for calculation errors in the range of punishments or whether that prejudice test is permissible under this Court's precedent.

determined that it complied with the statute. *Fenner*, slip op. at 10–11. The court then separately discussed an earlier exchange between the court and the prosecutor concerning Fenner's possible sentence. *Id.* at 11–12. In that exchange, the prosecutor stated, in Fenner's presence, that "all told, total[,] he is facing a life sentence."

The Court of Appeals held that this exchange was "an acceptable part of the inquiry required by N.C. Gen. Stat. § 15A-1242." *Id.* at 12. To be clear, the "thorough inquiry" described in the statute must be between the trial court and the defendant. But it is entirely appropriate for the trial court, in the course of the inquiry required under N.C.G.S. § 15A-1242, to ask the State what it believes is the properly calculated range of permissible punishments for the charged offenses. Indeed, given the complexity of our State's structured sentencing scheme, asking the State for its own calculation of the range of punishments is prudent. We emphasize that the trial court ultimately is responsible for engaging in the "thorough inquiry" required by the statute and cannot delegate that duty to the prosecutor. To the extent the Court of Appeals held otherwise, we modify the court's decision.

Next, Fenner argues that the Court of Appeals erred by holding that the trial court was not required to inform him of "all the charges he faced" and instead could address only those charges "the judge deemed pertinent." Again, this is not our reading of the Court of Appeals decision. Fenner's argument stems from the trial court's decision during the statutory colloquy to "focus on the B1 felonies," which were the most serious charges, without also considering the impact of the remaining

charges.

As explained above, the trial court's colloquy in this case complied with the statute because, even without addressing the remaining charges, the range of possible punishments was tantamount to the remainder of Fenner's life. But we agree with Fenner that trial courts should not focus solely on the charges that the court deems most serious. Given the complexity of the structured sentencing scheme, other lesser charges in some circumstances can impact the maximum range of a sentence. When calculating the permissible range of punishments, the best practice is for trial courts to use the checklist of inquiries we articulated in *State v. Moore,* 362 N.C. 319, 327–28 (2008). This includes informing the defendant of all charges in the case and the minimum and maximum possible sentence the defendant faces if convicted of all those charges. *Id.* We do not interpret the Court of Appeals decision to suggest otherwise but, to the extent it does, we modify the court's decision.

Finally, we address Fenner's constitutional argument, which is not properly before this Court. In his petition for discretionary review, Fenner only sought review of whether the Court of Appeals "erred in concluding the trial judge didn't commit prejudicial error by failing to conduct the 'thorough inquiry' mandated by N.C.G.S. § 15A-1242 before allowing Mr. Fenner to waive his right to assistance of counsel and represent himself at trial."

The petition included only a single, introductory paragraph citing any constitutional doctrine and that paragraph did not assert that the trial court violated

Fenner's constitutional rights. The remainder of the 27-page petition focused on Fenner's argument that if the "Court of Appeals' decision stands, there's not much left of this Court's case law enforcing § 15A-1242."

In his new brief to this Court, Fenner asserted both a statutory argument under N.C.G.S. § 15A-1242 and, separately, a constitutional claim under the Sixth Amendment to the United State Constitution. The latter issue was not addressed in the Court of Appeals decision and not listed as an issue in the petition for discretionary review.

We therefore conclude that the constitutional issue is not properly before this Court. On discretionary review, this Court limits its review solely to the issue or issues presented in the petition. *State v. Alonzo*, 373 N.C. 437, 443–44 (2020); *see also* N.C. R. App. P. 16(a).

A little less than two weeks before oral argument in this case, Fenner filed a petition for a writ of certiorari, asking this Court to examine his constitutional argument. By separate order, we deny the petition for a writ of certiorari. At that late stage of the proceeding, it is not appropriate to add an additional issue that was not addressed by the Court of Appeals decision and not presented as a proposed issue in the initial petition for discretionary review.

## Conclusion

For the reasons discussed above, we modify and affirm the decision of the Court of Appeals.

MODIFIED AND AFFIRMED.