STATE OF NORTH CAROLINA v. GUY TOBIAS LeGRANDE

No. 215A96

(Filed 24 July 1997)

**1. Constitutional Law § 281 (NCI4th)— capital murder— request for pro se defense—mental condition of defendant—court's inquiry**

The trial court did not err in a capital first-degree murder prosecution by initially granting defendant's request to represent himself and later by not revoking his right of self-representation. When defendant first expressed his desire to represent himself, the trial court conducted the required inquiry and entered an order committing defendant for evaluation of his competency to proceed; the director of Forensic Psychiatry at Dorothea Dix Hospital found defendant competent to waive representation by an attorney and to proceed to trial; and the court found defendant competent to waive counsel, made the appropriate inquiry, and allowed defendant to sign a waiver of counsel. The trial court's findings show that defendant was able to respond to the court's inquiry in a manner that demonstrated that he understood the nature of the proceedings, comprehended the serious nature of his situation, and was prepared to proceed with his defense in a rational or reasonable manner. The trial court's inquiry was sufficient to determine that defendant's decision to proceed *pro se* was knowing and voluntary.

**Am Jur 2d, Criminal Law §§ 759-768.**

Waiver or estoppel in incompetent legal representation cases. 2 ALR4th 807.

Supreme Court's views as to what constitutes valid waiver of accused's federal constitutional right to counsel. 101 L. Ed. 2d 1017.

2. Constitutional Law § 282 (NCI4th)— capital sentencing— pro se defense—comments by defendant—stand-by counsel not required to assume defense—no error

The trial court did not err in a capital sentencing proceeding by not revoking defendant's right to represent himself and by not requiring standby counsel to assume the conduct of the defense where, during the sentencing testimony, defendant called the jurors the "antichrists"; declared that the jurors could "kiss his natural black ass in the window of Helig-Meyers"; that the jurors could "pull the switch and let the good times roll"; and that defendant would meet them in hell where they would be required to worship him. As in *State v. Cunningham*, 344 N.C. 341, defendant was allowed to continue representing himself, as he wanted.

Am Jur 2d, Criminal Law §§ 759-768.

Waiver or estoppel in incompetent legal representation cases. 2 ALR4th 807.

Supreme Court's views as to what constitutes valid waiver of accused's federal constitutional right to counsel. 101 L. Ed. 2d 1017.

3. Constitutional Law § 280 (NCI4th)— capital sentencing— pro se defense—nature of sentencing hearing—defendant adequately informed

The trial court adequately advised a first-degree murder defendant who waived his right to counsel of the nature of the capital sentencing proceeding where the court clearly advised defendant of his right to counsel, made sure defendant understood that he was waiving his right to have stand-by counsel take over the case, and informed defendant that he had been convicted of first-degree murder and that the jury would be deciding whether he was sentenced to life imprisonment or to death.

Am Jur 2d, Criminal Law §§ 759-768.

Waiver or estoppel in incompetent legal representation cases. 2 ALR4th 807.

Supreme Court's views as to what constitutes valid waiver of accused's federal constitutional right to counsel. 101 L. Ed. 2d 1017.

4. **Appeal and Error § 155 (NCI4th)— capital murder—pro se defendant—restriction of stand-by counsel—error not assigned on appeal**

A first-degree murder defendant's assignment of error concerning whether the trial court had impermissibly restricted stand-by counsel was overruled where the *pro se* defendant did not raise the issue at trial and did not specifically and distinctly assign plain error in the record on appeal.

**Am Jur 2d, Appellate Review §§ 614, 616.**

5. **Criminal Law § 1340 (NCI4th Rev.)— capital sentencing— evidence of attempts to evade detection—relevant to pecuniary gain aggravating circumstance**

The trial court did not err in a capital sentencing proceeding by admitting evidence that defendant put plastic bags on his feet so that dogs could not pick up his scent and that he wore a stocking cap so that no hair would fall out. This evidence would have been admissible during the trial and, although defendant contended that these matters did not relate to the sole aggravating circumstance presented, killing for pecuniary gain, the jury heard evidence regarding the payment defendant was to receive for the murder. Testimony that he took great pains to make sure that he left no incriminating evidence supports the inference that this was a cold-blooded, calculated, contract killing for money.

**Am Jur 2d, Criminal Law §§ 598, 599; Homicide § 554.**

6. **Criminal Law § 1402 (NCI4th Rev.)— death sentence— proportionate**

A sentence of death for a first-degree murder was not disproportionate where the record fully supports the aggravating circumstance found by the jury, there was no indication that the sentence was imposed under the influence of passion, prejudice, or any other arbitrary consideration, this case is distinguishable from those cases in which the death penalty has been found disproportionate, and this case is similar to those cases in which the

death penalty was found proportionate. The proportionality pool contains several cases in which the death penalty has been upheld for contract killings and defendant was convicted of first-degree murder on both the basis of premeditation and deliberation and lying in wait. Defendant here murdered the victim after lying in wait and watching her for hours from the woods surrounding her home; he was willing to kill a person he had never met for money; he made elaborate plans to accomplish the murder and do it without getting caught; and he never showed any remorse for what he did and bragged to his friend.

**Am Jur 2d, Criminal Law § 628; Homicide §§ 439, 553.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was committed for pecuniary gain, as consideration or in expectation of receiving something of monetary value, and the like—post-*Gregg* cases. 66 ALR4th 417.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Helms, J., on 26 April 1996 in Superior Court, Stanly County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to his conviction for conspiracy to commit murder was allowed by the Supreme Court on 5 December 1996. Heard in the Supreme Court 14 May 1997.

*Michael F. Easley, Attorney General, by Gail E. Weis, Assistant Attorney General, for the State.*

*J. Clark Fischer for defendant-appellant.*

MITCHELL, Chief Justice.

Defendant, Guy Tobias LeGrande, was indicted for first-degree murder and conspiracy to commit murder. He was tried capitally at the 15 April 1996 Criminal Session of Superior Court, Stanly County, and was found guilty of first-degree murder on the basis of premeditation and deliberation and on the basis of lying in wait, and guilty of conspiracy to commit murder. After a capital sentencing proceeding, the jury recommended a sentence of death for the murder, and the trial court sentenced defendant accordingly. In addition, the trial court sentenced defendant to a nine-year consecutive sentence for conspiracy to commit murder.

STATE v. LeGRANDE

[346 N.C. 718 (1997)]

The State's evidence tended to show *inter alia* that on 27 July 1993, defendant entered the home of Ellen Munford and shot her twice in the back, killing her. Defendant worked with the victim's husband, Tommy Munford, at Jay's Downtowner Restaurant in Albermarle. Tommy Munford and defendant conspired to kill the victim. Mr. Munford and the victim had been estranged for two years.

At the time of the murder, the victim was living with another man. Mr. Munford had repeatedly harassed the victim and trespassed on the property where she was living with her new boyfriend. Mr. Munford told numerous people that he wanted to "do in" the victim. Mr. Munford took out a life insurance policy in the amount of $50,000 on the victim's life, naming himself as the sole beneficiary. He promised to pay defendant $6,500 if defendant would kill Mrs. Munford. On the day of the murder, Mr. Munford arranged to take his and Mrs. Munford's two children to the beach so that she would be alone in the house. Prior to picking up the children, Mr. Munford dropped defendant off in the woods next to the victim's house. Defendant was carrying a shotgun. As Mr. Munford left the victim's house, he blew his horn to signal to defendant that the victim was alone. Defendant watched Mrs. Munford for hours from the woods before he entered her home and killed her.

[1] By an assignment of error, defendant contends that the trial court erred initially by granting his request to represent himself and later by failing to revoke his right of self-representation.

First, defendant argues that the trial court improperly allowed him to waive counsel and proceed *pro se* because he was not competent to make these decisions. Defendant points to two letters that he wrote to the prosecution which he signed as coming from Lucifer and in which he contends he exhibited delusional thinking. Defendant also relies on the diagnosis of Dr. Rollins at Dorothea Dix Hospital that he was suffering from a mixed personality disorder with grandiose, narcissistic, and hypomanic traits. Defendant contends that to allow him to proceed *pro se* when the record clearly reflected his mental instability made his death sentence a foregone conclusion and resulted in a capital sentencing proceeding that was fundamentally unfair.

We conclude that the trial court properly granted defendant's request to proceed *pro se*. Before a defendant is allowed to waive appointed counsel, the trial court must insure that constitutional and statutory standards are satisfied. *State v. Thomas*, 331 N.C. 671, 673,

417 S.E.2d 473, 475 (1992). First, the defendant must "clearly and unequivocally" waive his right to counsel and instead elect to proceed *pro se. Id.* Second, the trial court must determine whether the defendant knowingly, intelligently, and voluntarily waived his right to in-court representation. *Id.* at 674, 417 S.E.2d at 476; *accord State v. Carter,* 338 N.C. 569, 581, 451 S.E.2d 157, 163 (1994), *cert. denied,* —— U.S. ——, 132 L. Ed. 2d 263 (1995).

> N.C.G.S. § 15A-1242 sets forth the duties of the trial court in determining the validity of a defendant's waiver of his right to counsel and decision to proceed *pro se.* Under the statute, a trial court must conduct an inquiry thorough enough to satisfy itself that the defendant
>
> (1) [h]as been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;
>
> (2) [u]nderstands and appreciates the consequences of this decision; and
>
> (3) [c]omprehends the nature of the charges and proceedings and the range of possible punishments.
>
> N.C.G.S. § 15A-1242 (1988).

*State v. Rich,* 346 N.C. 50, 62, 484 S.E.2d 394, 402 (1997).

The transcript reveals that when defendant first expressed his desire to represent himself, the trial court conducted the required inquiry and entered an order committing defendant to Dorothea Dix Hospital for evaluation of his competency to proceed. The order was entered due to the assertions of Mr. Walter Johnson, defendant's counsel at the time. Mr. Johnson stated that defendant had demonstrated wide mood swings and emotions that were indicative of possible mental problems.

Dr. Robert Rollins, director of the Forensic Psychiatry Division at Dorothea Dix Hospital, conducted an evaluation of defendant's capacity to proceed and to waive counsel. Dr. Rollins described defendant's mental status as follows:

> At the time of admission Mr. LeGrande is cooperative, pleasant, and has normal speech and a normal mood. No suicidal feelings, disorganized thinking, hallucinations, or delusions are noted. Concentration, orientation, memory, intellectual functions are

intact. In the impression of the admitting physician judgment and insight are good. The admitting physician did not make a diagnosis.

Defendant denied any alcohol or substance abuse. He told Dr. Rollins that he was charged with first-degree murder and asserted his innocence. As part of the evaluation, a psychological assessment was done. This assessment was summarized as follows:

> Mr. LeGrande did not appear to have a serious mental disorder, such as schizophrenia or bipolar disorder. Although at times he appeared hypomanic, he seemed to be able to control his behavior when he so desired. Mr. LeGrande also demonstrated characteristics of a personality disorder with antisocial and narcissistic features.

Dr. Rollins found defendant to be competent to proceed to trial and competent to waive representation by an attorney. Based on Dr. Rollins' report, Judge Steelman found defendant to be competent to waive counsel and, after making the appropriate inquiry, allowed defendant to sign a waiver of counsel on 9 February 1996.

The test for competence to proceed is whether a defendant has " 'a rational as well as factual understanding of the proceedings against him' " and " 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.' " *Godinez v. Moran*, 509 U.S. 389, 396, 125 L. Ed. 2d 321, 330 (1993) (quoting *Dusky v. United States*, 362 U.S. 402, 402, 4 L. Ed. 2d 824, 825 (1960) (per curiam)). The statutory test for competency in North Carolina is essentially the same. A defendant is incapable of proceeding when "by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner." N.C.G.S. § 15A-1001(a) (1988). The trial court's findings of fact show that defendant was able to respond to the court's inquiry in a manner that demonstrated that he understood the nature of the proceedings, comprehended the serious nature of his situation, and was prepared to proceed with his defense in a rational or reasonable manner. The trial court noted in its order that it accepted defendant's waiver of counsel after considering

> the responses of the defendant to the questions set forth above, the age of the defendant, his educational background, his famil-

iarity with the English language, the apparent ability of the defendant to understand the nature of these proceedings, and to communicate his positions and desires in this matter to the court, the mental condition of the defendant revealed in the report from Dorothea Dix Hospital, and the complexity of the crime charged.

We conclude that the trial court's inquiry was sufficient to determine that defendant's decision to proceed *pro se* was knowing and voluntary.

[2] Defendant next argues that the trial court erred by failing to revoke his right to represent himself and by not requiring standby counsel to assume the conduct of the defense. During his sentencing testimony, defendant called the jurors the "antichrists" and declared that they could "kiss his natural black ass in the window of Heilig-Meyers," that they could "pull the switch and let the good times roll," and that he would meet them in hell where they would be required to worship him. Defendant maintains that when faced with a defendant such as the one in this case who is determined to commit legal suicide by berating the jury at the capital sentencing proceeding, the trial court should terminate the right of self-representation and require standby counsel to assume the role of defense counsel for the remainder of the proceeding. We disagree.

A defendant's right to represent himself is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution; by Article I, Section 23 of the North Carolina Constitution; and by N.C.G.S. § 15A-1242. *State v. Williams*, 334 N.C. 440, 454, 434 S.E.2d 588, 596 (1993), *sentence vacated on other grounds*, 511 U.S. 1001, 128 L. Ed. 2d 42 (1994). "The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Faretta v. California*, 422 U.S. 806, 819-20, 45 L. Ed. 2d 562, 572-73 (1975). In *State v. Cunningham*, 344 N.C. 341, 474 S.E.2d 772 (1996), the defendant also argued that his conduct at trial amounted to a waiver of his right to self-representation, and this Court stated, "If the defendant because of his conduct lost his right of self-representation, he was not prejudiced when the court did not enforce this rule against him. He was allowed to continue representing himself, as he wanted." *Id.* at 352, 474 S.E.2d at 776.

[3] Finally, defendant contends that even assuming *arguendo* that he fully understood the nature of the proceedings against him and knowingly waived his right to counsel at the trial, his subsequent waiver of counsel at the capital sentencing proceeding was made without the

trial court's adequately advising him of the nature of the capital sentencing proceeding. We disagree.

A review of the transcript reveals that the trial court conducted the inquiry required by both the federal and state Constitutions and by N.C.G.S. § 15A-1242 by clearly advising defendant of his right to counsel, by making sure he understood that he was waiving his right to have standby counsel take over the case, and by informing defendant that he had been convicted of first-degree murder and that the jury would be deciding whether he was sentenced to life imprisonment or death. The Court in *Faretta* made it clear that a defendant's technical legal knowledge is not relevant to the determination of whether he knowingly waives the right to counsel. 422 U.S. at 836, 45 L. Ed. 2d at 582.

For the foregoing reasons, we conclude that the trial court properly accepted defendant's waiver of counsel at both the trial and the capital sentencing proceeding and did not err in failing to revoke his right of self-representation. This assignment of error is overruled.

**[4]** By another assignment of error, defendant contends that the trial court erred by impermissibly restricting the efforts of his standby counsel in violation of N.C.G.S. § 15A-1243. Defendant did not raise this issue at trial, and he did not "specifically and distinctly" assign plain error in the record on appeal as required by Rule 10(c)(4) of the Rules of Appellate Procedure. Therefore, this assignment of error is not properly before this Court and is overruled.

**[5]** By his final assignment of error, defendant contends that the trial court erred by allowing the prosecution to interject irrelevant and prejudicial matters at sentencing that did not relate to the sole aggravating circumstance presented, killing for pecuniary gain. Specifically, defendant argues that the trial court erred by allowing testimony at the capital sentencing proceeding that defendant put plastic bags on his feet so that dogs could not pick up his scent and that he wore a stocking cap so that no hair would fall out, leaving evidence pointing to him.

For capital sentencing proceedings, the legislature has provided:

(3) In the proceeding there shall not be any requirement to resubmit evidence presented during the guilt determination phase of the case, unless a new jury is impaneled, but all such evidence is competent for the jury's consideration in passing on punishment. Evidence may be presented as to any

> matter that the court deems relevant to sentence, and may
> include matters relating to any of the aggravating or mitigat-
> ing circumstances enumerated in subsections (e) and (f).
> Any evidence which the court deems to have probative value
> may be received.

N.C.G.S. § 15A-2000(a)(3) (Supp. 1996). We conclude that the evi-
dence complained of would have been admissible during the trial and
was also admissible during the capital sentencing proceeding. The
jury had heard evidence during the trial regarding the money Tommy
Munford was to pay defendant in exchange for the murder of
Munford's wife. However, Kristian Gaddy's testimony that defendant
described how he took great pains to make sure that he left no
incriminating evidence at the crime scene by covering his feet with
plastic bags, wearing extra large shoes, and wearing a stocking cap
over his head and face supports the inference that this was a cold-
blooded, calculated, contract killing for money. This assignment of
error is overruled.

**[6]** Having concluded that defendant's trial and separate capital sen-
tencing proceeding were free of prejudicial error, we turn to the
duties reserved by N.C.G.S. § 15A-2000(d)(2) exclusively for this
Court in capital cases. It is our duty in this regard to ascertain (1)
whether the record supports the jury's findings of the aggravating cir-
cumstances on which the sentence of death was based; (2) whether
the death sentence was entered under the influence of passion, prej-
udice, or other arbitrary consideration; and (3) whether the death
sentence is excessive or disproportionate to the penalty imposed in
similar cases, considering both the crime and the defendant. N.C.G.S.
§ 15A-2000(d)(2). After thoroughly examining the record, transcripts,
and briefs in the present case, we conclude that the record fully sup-
ports the aggravating circumstance found by the jury. Further, we
find no indication that the sentence of death in this case was imposed
under the influence of passion, prejudice, or any other arbitrary con-
sideration. We must turn then to our final statutory duty of propor-
tionality review.

In the present case, defendant was convicted of first-degree
murder on the basis of premeditation and deliberation and on the
basis of lying in wait. The jury found the aggravating circumstance
that defendant committed the crime for pecuniary gain, N.C.G.S.
§ 15A-2000(e)(6). The jury found as the sole statutory mitigating cir-
cumstance that defendant has no significant history of prior criminal

activity, N.C.G.S. § 15A-2000(f)(1). Of the five nonstatutory mitigating circumstances that were submitted, the jury did not find a single one to be mitigating.

In our proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994). We have found the death penalty disproportionate in seven cases. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). Defendant contends that this case is similar to three of the seven cases; however, we conclude that each of the cases cited by defendant is distinguishable from the present case.

In *State v. Benson*, the defendant was sentenced to death based on a theory of felony murder. This Court noted that the evidence showed he intended only to rob the victim because he shot at the victim's legs. The defendant confessed, pled guilty during the trial, and acknowledged wrongdoing in front of the jury. The jury found five mitigating circumstances, including mental or emotional disturbance.

In *State v. Stokes*, the defendant was only seventeen years old and had an IQ of 63. He was convicted of first-degree murder solely on the basis of felony murder, and this Court noted that the defendant planned to rob, not kill, the victim. A codefendant who participated in "the same crime, same manner," but who was older and had a significant criminal record, had been sentenced to life in prison. Finally, the jury found four statutory and eight nonstatutory mitigating circumstances, including mental or emotional disturbance and impaired capacity.

The defendant in *State v. Young* had two codefendants who entered the victim's house with him and participated in killing and robbing the victim. In addition, this Court noted that the defendant was only nineteen years old.

The facts in these three cases are distinguishable from the facts in this case for several significant reasons. First, defendant here was

thirty-four years old when he committed the murder. He attended college, was an aircraft mechanic, worked for the post office for six years, and was described as a "very intelligent young man." Second, defendant planned to kill Ellen Munford and was convicted of first-degree murder on the bases of premeditation and deliberation and lying in wait. Although Tommy Munford was sentenced to life plus twenty years in prison, he did not participate directly in the killing in the same manner as defendant. Tommy Munford did not lie in wait, watching Ellen Munford for hours before sneaking up on her in her own home and shooting her in the back twice at close range. Tommy Munford also acknowledged his wrongdoing and accepted responsibility for his conduct. Finally, the jury in the instant case found only one statutory mitigating circumstance, no significant criminal history. Therefore, we conclude that the present case is distinguishable from those cases in which we have found the death penalty disproportionate.

It is also proper for this Court to "compare this case with the cases in which we have found the death penalty to be proportionate." *McCollum*, 334 N.C. at 244, 433 S.E.2d at 164. The proportionality pool contains several cases in which the death penalty has been upheld for contract killings. Two of those cases are very similar to this case. In *State v. Bacon*, 337 N.C. 66, 446 S.E.2d 542 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 1083 (1995), the jury found the only aggravating circumstance submitted, that the murder was committed for pecuniary gain. The defendant was convicted of conspiracy to commit murder and first-degree murder on the theory of premeditation and deliberation. As in the present case, the defendant in *Bacon* conspired with the victim's spouse to kill the victim for a portion of insurance proceeds. The codefendant in *Bacon* received a life sentence even though the killing was her idea and the defendant was dominated by her. This Court found the death penalty to be proportionate despite the codefendant's life sentence because the two defendants did not commit the same crime in the same manner. Several significant factors were noted, such as the defendant was the only one to wield the knife; the codefendant confessed; and the codefendant had an emotional relationship with the victim, whereas the defendant had never met the victim until killing him in a preplanned, cold, calculated, and unprovoked manner.

In *State v. Basden*, 339 N.C. 288, 451 S.E.2d 238 (1994), *cert. denied*, —— U.S. ——, 132 L. Ed. 2d 845 (1995), the sole aggravating circumstance found by the jury was pecuniary gain. The first-degree

murder conviction was based on premeditation and deliberation. The defendant in *Basden* "planned and committed a cold, calculated, unprovoked killing, in the hope of receiving a portion of the victim's life insurance proceeds." *Id.* at 313, 451 S.E.2d at 252.

Defendant in the present case was convicted of first-degree murder on both the basis of premeditation and deliberation and the basis of lying in wait. This Court has recognized that "[t]he finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *State v. Artis*, 325 N.C. 278, 341, 384 S.E.2d 470, 506 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990). A defendant's lying in wait to commit murder has also been recognized by this Court as a significant consideration in proportionality review.

> The Court in [*State v.*] *Brown*, [320 N.C. 179, 358 S.E.2d 1, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987),] emphasized that the crime of first-degree murder by lying in wait at the victim's residence "shocks the conscience, not only because a life was senselessly taken, but because it was taken by the surreptitious invasion of an especially private place, one in which a person has a right to feel secure." *Id.* at 231, 358 S.E.2d at 34. "The victim, unaware of the threat, had no opportunity to defend [her]self. Unlike the victim felled in a face-to-face confrontation, this victim had no chance to fight for [her] life." *Id.* at 232, 358 S.E.2d at 34 (citation omitted).

*State v. Ward*, 338 N.C. 64, 128, 449 S.E.2d 709, 745 (1994) (alterations in original), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 1013 (1995). Defendant in this case murdered Ellen Munford after lying in wait, watching her for hours from the woods surrounding her home. Defendant was willing to kill a person he had never met before for money. Defendant made elaborate plans to accomplish the murder and to do it without getting caught. He never showed any remorse for what he did and, in fact, bragged to his friend about having "capped that ass." Accordingly, we conclude that the sentence of death recommended by the jury and ordered by the trial court in the present case is not disproportionate.

For the foregoing reasons, we hold that defendant received a fair trial, free of prejudicial error, and that the sentence of death entered in the present case must be and is left undisturbed.

NO ERROR.