IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-317

Filed 18 February 2026

Alexander County, Nos. 23CR237101-010; 23CR000102-010

STATE OF NORTH CAROLINA

v.

CARL THOMAS SAMSON

Appeal by defendant from judgments entered 18 July 2024 by Judge Michael Adkins in Alexander County Superior Court. Heard in the Court of Appeals 14 January 2026.

*Attorney General Jeff Jackson, by Assistant Attorney General Jordan W. Cansler, for the State.*

*Shelly Bibb DeAdder for defendant-appellant.*

WOOD, Judge.

Carl Samson ("Defendant") appeals from judgments entered following jury verdicts finding him guilty of felony larceny, felony breaking and or entering, and being a habitual felon while on post release supervision. On appeal, Defendant contends the trial court erred by: (1) denying Defendant's motion for a competency evaluation; (2) denying Defendant's motion to subpoena jail, prison and medical records; and, (3) allowing Defendant to represent himself. After careful review of the record, we conclude Defendant received a fair trial free from error.

## I. Factual and Procedural Background

On 17 February 2023, at approximately 10:00 a.m. Defendant entered Toni Carrigan's ("Carrigan") home in the Westwood Lane neighborhood in Taylorsville, North Carolina. A neighbor witnessed the intrusion and called both the police and Carrigan. When Carrigan returned home she found someone had entered her home and items were missing.

Officer Ethan Windsor ("Officer Windsor"), who also lived in the Westwood Lane neighborhood, responded to a neighbor's call reporting that someone driving a black Cadillac was possibly breaking and entering into homes located in the Westwood Lane neighborhood. After checking on his home and his neighbors, Officer Windsor viewed his neighbor's footage of the car in question and began patrolling the neighborhood on the look-out for the vehicle.

Approximately an hour later, Officer Windsor observed a black Cadillac, traveling at a high rate of speed through the parking lot of an old school, located approximately a mile and a half from the Westwood Lane neighborhood. Officer Windsor activated his blue lights and moved to block the vehicle in the school driveway. The Cadillac almost t-boned Officer Windsor's patrol car. Officer Windsor exited his vehicle, drew his weapon and ordered Defendant out of his vehicle. Defendant was secured in handcuffs before officers assessed the vehicle. There was a strong odor of marijuana coming from the Cadillac and a television and portable heater were clearly visible in the backseat. A neighbor at the scene identified the items as those that he had seen taken from Carrigan's home.

Defendant claimed he had no recollection of ever entering Carrigan's home or of taking the property. He stated that he had limited memory after taking a pill his child's mother had given him the night before to help with a headache.

Defendant was initially arrested on 17 February 2023 for six felonies: breaking and entering; larceny; possession of burglary tools; possession of a schedule VI controlled substance; possession with intent to manufacture, sell or deliver; and maintaining a vehicle, dwelling house or place for controlled substances use. Attorney Claudia Mundy ("Mundy") was initially appointed as Defendant's counsel.

On 9 October 2023, Defendant was indicted for felony breaking and entering, felony larceny, felony possession of marijuana, possession of marijuana with intent to sell or distribute marijuana, and habitual felon status. Once Defendant was indicted for having attained the status of a habitual felon, Mundy moved to withdraw from the case as she was not included on the "major level felony list." The trial court approved the withdrawal and appointed Attorney Matthew Byerley ("Byerley") to represent Defendant.

On 22 May 2023, the district attorney's office received a letter from Defendant. Defendant stated he was "of sound/sober mind, and [could] fully understand, and comprehend [his] actions." He requested a speedy trial and to "fire his attorney." He further stated he wanted to "get into court at the earliest convenience to request this in person and open court." The district attorney's office immediately forwarded the letter to Byerley and scheduled a hearing.

- 3 -

On 3 June 2024, the parties appeared for a hearing before the trial court, and Byerley made a motion to withdraw. He stated his motion to withdraw was based on Defendant's request. He informed the trial court he had been communicating with the district attorney and Defendant about possible plea agreements and Defendant was fully aware of the most recent offers available. The trial court then conducted a colloquy with Defendant. The trial court informed Defendant he faced a possible maximum sentence of 204 months of imprisonment. The trial court ensured Defendant was aware of his right to remain silent and have an attorney appointed to represent him and aware that if he chose to represent himself, he would be treated as an attorney. The trial court inquired if Defendant was impaired by any drugs to determine if he was of sound mind.

The trial court then found "[Defendant] has advised the Court that he willfully, understandingly, knowingly requested to represent himself in this matter. He further understands that he will be treated as if he is an attorney. He understands his rights to an attorney." The trial court then allowed Byerley's motion to withdraw, and allowed Defendant to proceed *pro se*. Defendant was sworn in open court to the waiver of counsel and signed the wavier form.

The trial court reviewed the final plea offer with Defendant which would require Defendant to plead to the felony breaking and entering, larceny after breaking and entering, and habitual felon status. In return, the State would dismiss the felony possession of marijuana and felony possession with the intent to sell and

deliver marijuana. The matters would be consolidated to one judgment with sentencing at the discretion of the trial court from 97 to 129 months of imprisonment. Defendant rejected the plea offer stating "I overdosed three times in prison. I'm not going back without fighting. I reject it."

As the trial court was reviewing the steps taken in the proceedings, Defendant stated, "I don't [want] to waive all counsel. I want to waive appointed counsel." The trial court then asked Defendant to clarify whether he now planned to seek a private attorney. Defendant stated that he understood: (1) he was currently the attorney on record; and (2) he was waiving a court appointed attorney but was free to try to find a *pro bono* attorney. Defendant affirmed he knew if he was unable to find a *pro bono* attorney, he would be representing himself. The waiver form was amended to reflect his desire to waive appointed counsel rather than all counsel.

On 15 July 2024, the matter came on for trial. The district attorney reviewed the pre-trial history with the trial court. The trial court noted Defendant's intention to proceed *pro se* was clear from his letter, however, his previous interactions with the trial court and paperwork in the file were ambiguous. Therefore, the trial court conducted a second colloquy with Defendant. The trial court reviewed every charge and its corresponding maximum and required minimum punishment with Defendant. Additionally, the trial court asked Defendant an extensive list of questions to determine his age, schooling level, physical and mental capacity, and understanding of his right to counsel. Defendant clearly stated he wanted to represent himself.

After Defendant's *pro se* status was determined, the trial court addressed pretrial issues with the parties. The State dismissed the charge of possession of marijuana with intent to sell and deliver and moved to join the remaining charges for a single trial. Defendant did not object. The trial court allowed the joinder.

Defendant had filed numerous motions from jail, which the trial court addressed. This included two relevant motions on appeal, one for a capacity evaluation, and another to subpoena Defendant's jail, prison and hospital records.

In regard to a capacity evaluation, Defendant filed a motion requesting an evaluation for the purpose of "determining [his] mental capacity and sanity at the time of the commission of [the] crime." The trial court explained that capacity and sanity are two different issues. The trial court attempted to clarify Defendant's request stating, "you are actually requesting [ ] that you be evaluated so that someone could determine if there was a defense that could be raised related to your mental status at the time of the commission of the offense?" Defendant responded in the affirmative. The State opposed the evaluation stating that intoxication impacting intent was the only issue being raised and that without understanding "who would evaluate him and how you go about obtaining that" they generally opposed the motion. Defendant argued the issue he was raising was not voluntary intoxication, but lifetime addiction paired with the unknowing consumption of fentanyl. The trial court stated "[t]o the extent that that is a motion for evaluation, I am going to deny it. If it were a request as an indigent, that would be a different story." The trial court

went on to clarify, " I do not find that you meet the standard for evaluation. So there are other things -- again, this is where you get back to being your own lawyer and I can't help you with this, but based on what you filed, I'm denying that motion because it doesn't meet the standard to send you to Central Regional for evaluation."

In evaluating Defendant's request to subpoena Defendant's jail, prison and hospital records the trial court attempted to clarify Defendant's request stating, "Based on what I'm hearing you say up to this point on the other things, you want those, again, to show that you have been suffering from an addiction for a long period of time; is that correct?" Defendant affirmed this reasoning. The trial court then denied his request.

The trial court also denied additional motions which Defendant does not now contest on appeal, including motions to request transcripts from trial court hearings in multiple counties from 2023 and 2016, motions for subpoenas for the district court judges from his previous hearings, the Alexander Sherriff's Office and Alexander Homeland Security, a motion to change venue, and numerous motions to dismiss.

The State presented extensive evidence including physical evidence, photographic evidence, and testimony from the victim, witnesses, a Taylorsville Police officer, an Alexander County Sheriff's officer, clerk of court staff, and department of correction staff. After deliberating for twenty-four minutes, the jury found Defendant guilty of felony larceny, felony breaking and or entering, and obtaining the status of habitual felon while on post release supervision but not guilty

of possession of marijuana. Defendant was sentenced as a habitual felon at a prior record level IV to 90 to 120 months of imprisonment each for breaking and entering and felony larceny to run consecutively. Defendant gave oral notice of appeal in open court.

## II. Analysis

Defendant raises three issues on appeal, the trial court erred by: (1) denying Defendant's motion for a competency evaluation; (2) denying Defendant's motion to subpoena jail, prison and medical records; and (3) allowing Defendant to represent himself.

### A. Competency

In his written motion to the trial court Defendant stated, "On this day 7/09/2024, I Carl Samson file motion to be evaluated for determining my mental capacity, and sanity at the time of the commission of [the] crime." During the hearing on his motion, the trial court clarified whether Defendant was actually making two motions because mental capacity and sanity are two separate legal concepts. The trial court continued, "So what you are actually requesting is that you be evaluated so that someone could determine if there was a defense that could be raised related to your mental status at the time of the commission of the offense?" Defendant responded, "Right. Whether there was any intent or that I intended to do it or that I was even in the right mindset at the commission." The trial court then inquired whether Defendant had a concern relative to his current ability to stand trial or

represent himself that day. Defendant clearly stated "No, sir. I'm - - I'm of sound mind and understanding right now. I was addressing the actual time of the commission of the crime." After hearing from both Defendant and the State, the trial court denied Defendant's motion.

On appeal, Defendant argues the trial court erred by denying Defendant's motion for a *competency* evaluation although Defendant simultaneously stated his competency to stand trial was not the issue to be addressed by the trial court, nor is it the issue on appeal.

As there appears to be confusion by both Defendant and the State with the concepts of capacity and competency, we find it necessary to clarify.

Capacity is generally defined as, "[t]he mental ability to understand the nature and effect of one's acts." *Capacity, Black's Law Dictionary* (12th ed. 2024). It is a term applied to multiple situations under the law including but not limited to: *criminal capacity* when considering 'sanity' or the mental ability of understanding right from wrong that a person must possess to be held accountable for a crime; *diminished capacity* when considering mental conditions short of insanity such as intoxication, trauma or disease that prevents a person from having the mental state necessary to be held responsible for a crime; and even *testamentary capacity* when considering the mental ability necessary to prepare a will. *Capacity, Black's Law Dictionary* (12th ed. 2024) (including all related examples of capacity). As a measure of mental ability, capacity is frequently based on medical and mental health

evaluations. *See State v. Applewhite*, 281 N.C. App. 66, 73, 868 S.E.2d 137, 143 (2021), aff'd, 386 N.C. 431, 904 S.E.2d 749 (2024); *see also State v. Whitted*, 209 N.C. App. 522, 529, 705 S.E.2d 787, 792 (2011).

Competency, in contrast, is specific to, "a criminal defendant's ability to stand trial, measured by the *capacity* to understand the charges and the proceedings, to consult meaningfully with counsel, and to assist in the defense." *Competency, Black's Law Dictionary* (12th ed. 2024) (emphasis added). Competency is a legal determination.

> The Due Process Clause of the Constitution of the United States shields criminal defendants who are incompetent to stand trial for charges levied against them by the State from being compelled to do so while they remain incompetent. *Cooper v. Oklahoma*, 517 U.S. 348, 354, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996). In order to possess the competence necessary to stand trial, a defendant must have the "capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

*State v. Hollars*, 376 N.C. 432, 441–42, 852 S.E.2d 135, 141–42 (2020). A person's capacity impacts their ability to be competent. Our Supreme Court has stated, "[i]f there is substantial evidence suggesting that a defendant may lack the *capacity* to stand trial, then a sufficient inquiry into her *competency* is required . . . ." *State v. Flow*, 384 N.C. 528, 551, 886 S.E.2d 71, 88 (2023) (quoting *State v. Sides*, 376 N.C. 449, 459, 852 S.E.2d 170, 177 (2020) (emphasis added).

When considering *criminal capacity* and its impact on competency our statutes and Courts have used the two terms interchangeably. The North Carolina General Statute § 15A-1001 is titled "No proceedings when defendant mentally *incapacitated*; exception" and states,

> (a) No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner. This condition is hereinafter referred to as "*incapacity* to proceed."

N.C. Gen. Stat. § 15A-1001(a) (emphasis added). Additionally, this Court has stated, "[b]y statute, '[w]hen the capacity of the defendant to proceed is questioned, the court shall hold a hearing to determine the defendant's capacity to proceed.'" *State v. Whitted*, 209 N.C. App. 522, 529, 705 S.E.2d 787, 792 (2011) (quoting N.C. Gen. Stat. § 15A–1002(b)). However, Courts have referred to such a hearing as both a "competency hearing" as well as a "hearing to determine capacity." *See Flow*, 384 N.C. at 546, 886 S.E.2d at 85 ("the trial court is required to 'hold a hearing to determine the defendant's capacity to proceed.' N.C. [Gen. Stat.] 15A-1002(a)-(b) (2021). When a competency hearing is conducted . . . ."). Additionally, courts have also referred to the evaluation as both a competency evaluation and a capacity evaluation. *See Hollars*, 376 N.C. at 435, 852 S.E.2d at 138 ("the trial court granted the request of defense counsel for another competency evaluation of defendant"); *see also State v. Wray*, 228 N.C. App. 504, 507, 747 S.E.2d 133, 135 (2013) ("A capacity to proceed

evaluation is conducted to determine . . .").

This overlap in terminology is unique to the consideration of *criminal capacity*. Competency is not synonymous with other issues of capacity including *diminished capacity* which is a separate legal defense. "A defendant is entitled to present evidence that a diminished mental capacity not amounting to legal insanity negated his ability to form the specific intent . . . ." *State v. Page*, 346 N.C. 689, 698, 488 S.E.2d 225, 231 (1997).

In the case *sub judice,* Defendant explicitly stated during his pretrial motion, "I'm of sound mind and understanding right now. I was addressing the actual time of the commission of the crime." Additionally, he reiterates on appeal "[Defendant] did not contend that he was incompetent to stand trial. Rather, [Defendant's] sole defense was that he was involuntarily intoxicated when he entered Ms. Carrigan's home and did not have the requisite intent to commit the crimes of breaking and entering and larceny."

During trial, Defendant made attempts to request some type of evaluation to aid him in presenting a defense of diminished capacity due to involuntary intoxication. However, what type of evaluation, if any, administered eighteen months after the crime was committed could be conducted to determine his involuntary intoxication at the time of the crime was unclear.

When ruling on the issue, the trial court stated "[t]o the extent that that is a motion for evaluation, I am going to deny it. If it were a request as an indigent, that would be a different story." The trial court went on to clarify,

> I do not find that you meet the standard for evaluation. So there are other things -- again, this is where you get back to being your own lawyer and I can't help you with this, but based on what you filed, I'm denying that motion because it doesn't meet the standard to send you to Central Regional for evaluation.

On appeal, Defendant does not argue he should have received an evaluation of his competence to stand trial at Central Regional. Instead, and without any legal authority, Defendant argues he should have received some other unknown type of evaluation to aid in proving involuntary intoxication at the time of the offense.

As the trial court alluded when it stated, "If it were a request as an indigent, that would be a different story" and "I can't help you with this," there are other arguments Defendant could have presented as an indigent defendant. Under N.C. Gen. Stat. § 7A-450 an indigent person who is entitled to counsel is also entitled to "other necessary expenses of representation." Gen. Stat. § 7A-450. Under this statute our courts have held, when defendants demonstrate a particularized need, experts or evaluations may be ordered. *See State v. Johnson*, 317 N.C. 193, 198-99, 344 S.E.2d 775, 778-79 (1986). However, Defendant failed to make an argument about what type of evaluation he expected could aid his defense when both the trial court and the State appeared confused as to how to evaluate involuntary intoxication eighteen months

after the intoxicating event. Additionally, and more consistent with his story to the trial court, Defendant could have made a motion for access to an expert to testify to the effects of fentanyl on a person's mental capacity.

"[A] defendant who elects to appear *pro se* cannot expect the trial judge to relinquish his role as impartial arbiter in exchange for the dual capacity of judge and guardian angel of defendant." *State v. Lashley*, 21 N.C. App. 83, 85, 203 S.E.2d 71, 72 (1974). Consequently, the trial judge cannot explain to a *pro se* defendant how best to mount a defense. *Id.* Further, this Court "will not consider arguments based upon matters not presented to or adjudicated by the trial tribunal." *State v. Roache*, 358 N.C. 243, 314, 595 S.E.2d 381, 426 (2004) (quoting *State v. Eason*, 328 N.C. 409, 420, 402 S.E.2d 809, 814 (1991). As Defendant failed to request access to an expert and did not articulate what type of evaluation could possibly have been effective or relevant at trial, this issue is waived on appeal.

**B. Subpoena**

Next, Defendant contends the trial court erred by denying Defendant's motion to subpoena jail, prison, and medical records. We disagree. A trial court's decision to deny a defendant's motion to compel discovery is reviewed for an abuse of discretion. *Belcher v. Averette*, 152 N.C. App. 452, 455, 568 S.E.2d 630, 633 (2002). Under abuse of discretion review, we determine "whether a decision is manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision." *Mark Grp. Int'l, Inc. v. Still*, 151 N.C. App. 565, 566, 566 S.E.2d

160, 161 (2002). "In exercising that discretion, the trial judge should consider the relevancy and materiality of the items called for, the right of the subpoenaed person to withhold production on other grounds, such as privilege, and also the policy against 'fishing expeditions.'" *State v. Stimson*, 246 N.C. App. 708, 710, 783 S.E.2d 749, 750–51 (2016) (quoting *State v. Newell,* 82 N.C. App. 707, 709, 348 S.E.2d 158, 160 (1986)).

The trial court explained the concepts of relevancy and materiality to Defendant earlier in the hearing when reviewing Defendant's motion for transcripts, stating material must be relevant "to establish anything you did or did not do on the date of this offense." The trial court further clarified, "It doesn't have any relevance to make any material fact more or less likely to have occurred." The trial court then discussed with Defendant the relevancy and materiality of the jail, prison and medical records at issue. The trial court asked, "[b]ased on what I'm hearing you say up to this point on the other things, you want those, again, to show that you have been suffering from an addiction for a long period of time; is that correct?" Defendant answered affirmatively. However, how long Defendant suffered from addiction was not an issue in the case. Defendant did not point to any specific records that could illuminate his level of intoxication on the relevant date in question, nor did he allege records exist that would reflect incapacity significant enough to render him incapable of forming specific intent. Without more than a general intention to prove a history of drug abuse, the trial court made the reasoned decision that subpoenas for Defendant's entire medical and penal records would be a "fishing expedition."

## C. Right to Self-Representation

Finally, Defendant contends the trial court erred by allowing him to represent himself. We disagree.

"This Court reviews de novo a criminal defendant's appeal regarding waiver of counsel. Under a de novo review, this Court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. McGirt*, 298 N.C. App. 223, 228, 913 S.E.2d 476, 480, *writ allowed*, 916 S.E.2d 239 (N.C. 2025), and *review allowed*, 916 S.E.2d 279 (N.C. 2025) (cleaned up).

A defendant "has a right to handle his own case without interference by, or the assistance of, counsel forced upon him against his wishes." *State v. Mems*, 281 N.C. 658, 670-71, 190 S.E.2d 164, 172 (1972). "Before allowing a defendant to proceed pro se, the trial court must establish both that the defendant clearly and unequivocally expressed a desire to proceed without counsel, and that the defendant knowingly, intelligently, and voluntarily waived the right to counsel." *State v. Lindsey*, 271 N.C. App. 118, 126, 843 S.E.2d 322, 328 (2020). Before a defendant can waive his right to counsel, "the trial court must [e]nsure that constitutional and statutory standards are satisfied." *State v. LeGrande*, 346 N.C. 718, 722, 487 S.E.2d 727, 729 (1997). "This Court has held that N.C. [Gen. Stat.] § 15A-1242 satisfies any constitutional requirements by adequately setting forth the parameters of such inquiries." *State v. Fulp*, 355 N.C. 171, 175, 558 S.E.2d 156, 159 (2002). N.C. Gen. Stat. § 15A-1242 states,

> A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:
>
> (1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;
>
> (2) Understands and appreciates the consequences of this decision; and
>
> (3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.

N.C. Gen. Stat. § 15A-1242. Defendant contends the trial court's colloquy did not satisfy the second or third prong of the statute. Regarding the second prong, Defendant argues the trial court could not adequately determine his understanding without the competency evaluation or medical records he requested. Regarding the third prong, Defendant argues the trial court failed to explain the $4,095.50 in court costs associated with his case. This is inapposite.

**1. Understanding and appreciating the consequences of his decision**

Prior to trial Defendant sent a letter to the district attorney's office in which he stated he was "of sound/sober mind, and [could] fully understand, and comprehend [his] actions." He requested a speedy trial and to "fire his attorney." He wanted to "get into court at the earliest convenience to request this in person and open court."

On 3 June 2024, the trial court held a hearing on the withdrawal of Defendant's counsel. Defendant engaged in a colloquy with the trial court that included a review

of his maximum punishment, his rights to silence and representation, and ensured he was making the decision freely. Based on this interaction, the trial court granted defense counsel's motion to withdraw and requested Defendant sign a waiver of counsel. When reviewing the waiver, Defendant restated his position saying he did not want to proceed *pro se*, rather he wanted to fire his appointed counsel. The trial court then clarified Defendant's position.

> THE COURT: So are you going to hire an attorney?
>
> THE DEFENDANT: I plan on seeking an attorney.
>
> THE COURT: So you are going to hire your own attorney? That's the only way you can seek an attorney, is to hire an attorney.
>
> THE DEFENDANT: No, there is pro bono attorneys, ma'am.
>
> THE COURT: So at this point, do you have an attorney?
>
> THE DEFENDANT: No. I'm the attorney.
>
> THE COURT: All right. I'm going to have you complete a different waiver, sit.
> . . .
>
> THE COURT: Thank you, [Defendant], sir, what you advised the Court is at this point either you plan to represent yourself or sir, that you will plan to either hire to seek the assistance of counsel through pro bono service; is that accurate?
>
> THE DEFENDANT: Correct
>
> THE STATE: Okay. You do understand as of July 15th if you walk in to this courtroom, sir, you are on the trial

- 18 -

calendar that means if you do not have an attorney, you
will be representing yourself. Do you understand that?

THE DEFENDANT: Yes, ma'am.

When Defendant's case was called for trial, the trial court was concerned that, while his initial request was clear, the colloquy and forms from the previous hearing were more ambiguous. Therefore, the trial court engaged him in an extensive colloquy concerning his right to proceed *pro se*. The trial court clearly conducted a thorough colloquy with Defendant about his waiver that met all requirements set forth in N.C. Gen. Stat. § 15A-1242. Defendant stated clearly and repeatedly that he knowingly, voluntarily, and intelligently waived his right to counsel. *Lindsey*, 271 N.C. App. at 126, 843 S.E.2d at 328. He swore he was sober, had a high school education, and understood that he would be held to the standards of all other attorneys without help from the trial court. The trial court informed him of his right to counsel and of what would be expected from him if he acted as his own counsel. The trial court also informed Defendant of the maximum incarceration levels for all of his offenses.

As noted *supra,* Defendant clearly stated at the trial court and on appeal that his request for a competency evaluation had nothing to do with his competency to stand trial and that his medical records were requested to demonstrate a history of drug abuse. Defendant swore he was currently sober and always competent, therefore a colloquy sufficient to meet all requirements in N.C. Gen. Stat. § 15A-1242

was all that was necessary to ensure Defendant understood and appreciated the consequences of this decision.

**2. Comprehending possible punishments and court costs**

Nothing in the record before us demonstrates "a reasonable likelihood that the defendant might have made a different decision with respect to the issue of self-representation had he or she been more accurately informed about 'the range of permissible punishments'" to support Defendant's contention that the trial court failed to meet the requirements set forth in N.C. Gen. Stat. § 15A-1242(a)(3). *State v. Gentry*, 227 N.C. App. 583, 600, 743 S.E.2d 235, 246 (2013) (quoting N.C. Gen. Stat. § 15A-1242).

The trial court informed Defendant multiple times that, based on the possibility of habitual felon status paired with his multiple felony charges, he would face a maximum possible sentence of nearly fifty years in prison. Defendant repeatedly asserted his decision to proceed *pro se* when facing the possibility of nearly fifty years in prison. It is beyond incredulity that the trial court's failure to inform him of a possible $4,095.50 in court costs would have influenced him to make a different decision when the potential risk of fifty years of prison did not. Therefore, we hold Defendant's waiver of the right to counsel was knowing and voluntary and the trial court did not err in allowing him to proceed *pro se*.

### III. Conclusion

The trial court did not err in denying a competency evaluation when Defendant

repeatedly stated he was not requesting an evaluation of his competency to stand trial and further failed to articulate what type of evaluation or expert could possibly have been effective or relevant at trial. Additionally, the trial court did not abuse its discretion when it made the reasoned decision that subpoenas for Defendant's entire medical and penal records would have been a "fishing expedition."

Finally, the trial court followed all the necessary requirements of N.C. Gen. Stat. § 15A-1242 and did not err in determining Defendant's waiver of the right to counsel was knowing and voluntary. Therefore, we hold Defendant received a fair trial free from error.

NO ERROR.

Judge TYSON concurs.

Judge FREEMAN concurs in result only.